Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

Division

RECEIVED
SDNY PRO SE OFFICE
2021 APR 27  AM 10: 23

Saw Creek AND Pine Ridge
Indian Communities.
Tribal Council

*Plaintiff(s)*

(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)

-v-

Raymond Tonkin
AND
Jessica Keith
AND
Craig Lowe

*Defendant(s)*

(Write the full name of each defendant who is being sued.  If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.  Do not include addresses here.)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. _____

(to be filled in by the Clerk's Office)

Jury Trial: *(check one)*  ☐ Yes  ☑ No

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non–Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to
electronic court files.  Under this rule, papers filed with the court should *not* contain: an individual's full social
security number or full birth date; the full name of a person known to be a minor; or a complete financial account
number.  A filing may include *only*: the last four digits of a social security number; the year of an individual's
birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any
other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in
forma pauperis.

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name     Saw Creek and Pine Ridge Indian Communities Tribal Council Rosemary Scott Sumter

Address     1735 Madison Avenue #13E

New York     NY     10029

*City*     *State*     *Zip Code*

County     New York

Telephone Number     (212) 369-6019 / (c) 917 289-6107

E-Mail Address     rosiescott1219@yahoo.com

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

Name     Jessica Keith

Job or Title *(if known)*     CEO of Norristown State Hospital

Address     1001 Sterigere Street

Norristown     PA     19401-5397

*City*     *State*     *Zip Code*

County     Montgomery County

Telephone Number

E-Mail Address *(if known)*

☑ Individual capacity     ☑ Official capacity

Defendant No. 2

Name     Craig Lowe

Job or Title *(if known)*     Warden of Pike County Correctional Facil

Address     175 Pike County Blvd

Lords Valley     PA     18428

*City*     *State*     *Zip Code*

County     Pike County

Telephone Number

E-Mail Address *(if known)*

☑ Individual capacity     ☑ Official capacity

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

Defendant No. 3
    Name
    Job or Title *(if known)*
    Address

Raymond Tonkin
District Attorney of Pike County
506 Broad Street
Milford    PA    18337-152
City      State      Zip Code

    County
    Telephone Number
    E-Mail Address *(if known)*

Pike County

☑ Individual capacity    ☑ Official capacity

Defendant No. 4
    Name
    Job or Title *(if known)*
    Address

N/A
N/A
N/A
N/A
City      State      Zip Code

    County
    Telephone Number
    E-Mail Address *(if known)*

N/A
N/A
N/A

☐ Individual capacity    ☐ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

     ☐ Federal officials (a *Bivens* claim)

     ☑ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

     Tribal Sovereign Immunity AND Violation of Tribal LAND

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

N/A

D.     Section 1983 allows defendants to be found liable only when they have acted "under color of any
       statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."
       42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color
       of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of
       federal law. Attach additional pages if needed.

Please View Attachments

## III.   Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the
alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include
further details such as the names of other persons involved in the events giving rise to your claims. Do not cite
any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain
statement of each claim in a separate paragraph. Attach additional pages if needed.

A.     Where did the events giving rise to your claim(s) occur?

ON the County recorded Indian Title of Pine Ridge, I

B.     What date and approximate time did the events giving rise to your claim(s) occur?

ON November 18, 2019 At Approximately 12:15 pm.

C.     What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what?
       Was anyone else involved? Who else saw what happened?)*

Please View Attachment

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

### IV.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Please View Attachment

### V.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

Please View Attachment.

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   _____

Signature of Plaintiff   _____
Printed Name of Plaintiff   _____

### B.     For Attorneys

Date of signing:   _____

Signature of Attorney   _____
Printed Name of Attorney   _____
Bar Number   _____
Name of Law Firm   _____
Address   _____
                   _____|_____|_____
                        City                        State          Zip Code
Telephone Number   _____
E-mail Address   _____

## List of Exhibits

A. NYS Supreme Court, recognition of Tribe
B. Commonwealth of Pennsylvania Governor's Office of General Counsel, recognition of Tribe
C. Commonwealth of Pennsylvania Office of Attorney General, recognition of Tribe
D. Court of Common Pleas of Lehigh County, Pennsylvania, recognition of Tribe
E. Tonia Scott, Indian Status, recognition (U.S. District Court )
F. Indian Title, 'Declaration of Ownership Affidavit' for Pine ridge, Pennsylvania
G. Indian Title, 'Declaration of Ownership Affidavit' for Saw Creek, Pennsylvania
H. Decree 01
I. Decree 11 (Eleven)
J. 25 USC 1321/1755 (Assumption by State of Criminal jurisdiction
K. 25 USC 1324 (Amendment of State Constitution and/or Statues)
L. 25 USC 2, Sec. 1.4 (State and/or Local Laws Do Not Apply)
M. Department of Interior/BIA (Indian Titled)
N. Tribal I.D. (Deputy Chief, Keeba Scott-Harris)
O. Letter to commit D.C. Harris into Norristown State Hospital (A-C)
P. Anti-psychotic medication Zyprexa Side Effects
Q. Indian Title,' Declaration of Ownership Affidavit' Duchess County, NY
R. Court of Common Pleas of Pike County, Pa Criminal Defendant List, Motion to Change Location of Proceedings Before an Issuing Authority (DA, Raymond J. Tonkin) and "ORDER" unsigned by Gregory H. Chelak, P.J. ; Certificate of Service dated 11/21/201, Deputy Administer Clerk, Mary C. Swartwood
S. Pa. R. Crim. P. 1100 (600)
T. 1154. Law Enforcement Use of County Correctional Institutions
U. Hard commodity (Natural Sapphire)

Certification AND Closing.

Under Federal Rule of Civil Procedure 11, by signing below, We, the Saw Creek AND Pine Ridge Indian Communities Tribal Council certify to the best of our Knowledge, information AND belief that this complaint: (1) is Not being presented for AN improper purpose, such as to harass, cause unnecessary delay, or Needlessly increase the cost of litigation (2) is supported by existing law or by A Nonfrivolous Argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; AND (4) the complaint otherwise complies with the requirements of Rule 11.

We, the Saw Creek AND Pine Ridge Indian Communities Tribal Council Agree to provide the Clerk's Office with ANY changes to our address where case-related papers may be served. We understand that our failure to Keep a current address on file with the Clerk's Office ma result in the dismissal of our case.

Signatures of the Saw Creek AND Pine Ridge Indian Communities Tribal Council members:

Rosemary Scott-Sumter
Rosemary Scott Sumter.

SAW CREEK AND PINE RIDGE INDIAN Communities Tribal Council V. Raymond Tonkin AND Jessica Keith. AND Craig Lowe.

Now Comes, Plaintiff, the Saw Creek AND PINE RIDGE INDIAN Communites Tribal Council, Plaintiff brings this 42 USC 1983 Action on behalf of the six (6) Saw Creek AND PINE RIDGE INDIAN Communities Trib. officials. They Are AS followed:

1. Deputy Chief Keeba Scott Harris
2. Chief of Law Enforcement, ADAM Abdur-Rahim
3. Deputy of Law Enforcement, Musa Abdur-Rahim
4. Deputy of Law Enforcement, Sushane Adams Heylinger
5. Deputy of Law Enforcement, Troy Anthony Sutton
6. Deputy of Law Enforcement, Sekou Rashid Abdullah

Principle Chief Tonia Scott, Name will be mention within this complaint but Principle Chief Tonia Scott has an ongoing separate Action pending.

The United States District Court has jurisdiction to Plaintiff Action, According to the following Precedents:

A. 28 USC 1331, "The District Courts shall have original jurisdiction of all civil Actions Arisi under the Constitution, laws or treaties of the United States;

B. "Any Action charging violation of INDIAN Civi

②

Rights Act is within jurisdiction of A federal Court." See <u>Brunette V. DANN</u>, 417 F. Supp 1382 (D. Idaho 1976);

C. "It was intent of Congress enacting Indian Civil Rights Act to create body of substantive rights patterned in part on Federal Bill of Rights and to place jurisdiction, in case of violation of those rights in District Courts." See <u>Solomon V. LaRose</u>, 335 F. Supp. 715 (D. Neb 1971);

D. "Article 1, Section 8 of the U.S. Constitution made Indian relation exclusively with the United State See <u>Oneida Indian Nation V. County of Oneida</u> (1974);

E. In <u>Oneida Indian Nation V. County of Oneida</u>, 414 US 661 (1974)"... Indian Lands became the exclusive province of the federal Law";

F. The Apporpriation Act of 1871, made Indians and Indian tribes the exclusive jurisdiction of Congress;

G. The 1924 Indian Citizenship Act, made Indians United States citizens with the privileges and/or immunities of the 14th Amendment, of the U.S Constitution. See <u>Slaughter-House Cases</u> (1873).

(3)

# Outline of Events

On November 18, 2019, Principle Chief Tonia' Scott and the six (6) Tribal officials were falsely imprison-ed (35 CJS 9-10), illegally and unlawfully Arrested on the Pike County recorded Indian Title hamlet of Pine Ridge because the private Corporation/political subdivision of Pike County has been charging the dwellers on the Indian title hamlets of Saw Creek and Pine Ridge property taxes without the Authorization of the S.C.P.R.I.C Tribal Government and stealing the monetary proceeds from the Tribal Government.

In retaliation, when Principal Chief and the six (6) tribal officials demanded that these Abuses cease, Principal Chief Tonia Scott and the six (6) tribal officials were Abducted from the Indian title of Pine Ridge and placed into institutions, in which Principal Chief and the six (6) tribal officials have been physically, mentally and emotionally assaulted. Principal Chief and the six (6) Tribal officials liberties are restrained without consent and/or Authorization from either parties, by the Actions of Defendant Raymond Tonkin, Defendant Jessica Keith and Defendant Craig Lowe.

Thus, in an effort to have Principal Chief and the six (6) tribal officials "Appear" to Abandon the

④

INDIAN Title hamlets of Saw Creek AND Pine Ridge, into the jurisdiction of the Pike County (Private Corporation). The INDIAN title hamlets of Saw Creek AND Pine Ridge is titled in the name of Principal Chief Tonia Scott AND conveyed into the jurisdiction of the S.C.P.R.I.C Tribal GOVERNMENT. See Exhibit E, Exhibit F, Exhibit G, Exhibit H AND Exhibit I.

On November 18, 2019, At Approximately 12:15 pm, Principal Chief Tonia' Scott AND the six (6) Tribal officials were Arrested by the Pennsylvania State Police, Blooming Grove (Troop R). The P.S.P Troopers trespassed on the INDIAN Title hamlet of Pine Ridge AND charged State offenses to Principal Chief AND the six (6) Tribal officials, such as tre--spassing AND terrorism. Because Principal Chief AND the (6) six tribal officials were in the process of legally AND lawfully ejecting A criminal trespass--er NAMED John Derbyshire from the INDIAN title hamlet of Pine Ridge. State laws DO Not Apply to INDIAN title lands). See Exhibit J, Exhibit K, Exhibit L AND Exhibit M.

"It has long been the law that INDIANS holding land under Aboriginal (INDIAN) title may maintain an ejectment Action Against trespassers". See Marsh v. Brooks, 49 US 223, 232 (1850) (the right of ejectment "is Not open to question");

SEE Also, <u>ONEIDA INDIAN NATION</u> V. <u>County of ONEIDA</u>, 470 US 226 (1985), "INDIANS MAY MAINTAIN trespass Actions for VIOLATIONS of their land rights".

"Aboriginal (INDIAN) title creates A legally enforceable property right against anyone but Congress." SEE <u>Beecher V. Wetherby</u>, 95 US 517 At 525 (1877)

"USE AND regulation of Tribal LAND is A matter of Tribal Self-government properly left to the juris-diction of Tribal Court". SEE <u>COWAN V. RoseBud Sioux Tribe</u>, 405 F. Supp. 1335 DSD (1975)

"What CAN be reSTated here BASED ON EARLIER find-ings is that Aboriginal Title is A "Quiet AND uncontrolled" possession, sui generis". See <u>Cherokee Nation V. Georgia</u>, 30 US 15 (1831)

25 USC 1041(A)- Any land the title to which is held IN the NAME of AN INDIAN or INDIAN Tribe, Subject to restrictions by UNITED States AgAinst Alienation.

IN <u>Johnson V. MC Intosh</u> (1831), "(Aboriginal Title)... the Court guarantee the occupants protection from intrusion". Id At 1372.

At the P.S.P. Blooming Grove Station, Principal Chief AND Deputy Chief KEEBA Scott Harris were handcuffed to A metal bench for eleven (11) hours,

(6)

before being transported to Pike County Correction
Facility into the UNAthorized Custody of Defendant
Craig Lowe, Principal Chief AND Deputy Chief Assist.
Scott Harris were handcuffed, ANKle shackled AND
shadowed by two (2) Armed P.S.P. Troopers during
their transport to P.C.C.F. The five (5) Tribal
Law Enforcement Officers were subjected to the
same degrading Abuse. The five (5) Tribal Law
Enforcement officers/officials were transported in
handcuffs, ANKle shackles AND shadowed by P.S.P.
(Armed) Troopers in the same fashion matter (5)
five minutes After Principal Chief AND Deputy
Chief Harris. "Holding that "cuffing" AN inmate
to a hitching post for a period of time extending
past that required to Address AN immediate
Danger or threat is a violation of the 8th Amendment."
See Hope v. Pelzer, 536 US 730, 738, 747 (2002)


At P.C.C.F. Deputy Chief Harris Never contracted
for housing AND/or services with PCCF. DC Harris
was Never booked AND/or fingerprinted by Def-
-endant Lowe Staffers, At PCCF. The five (5).
Tribal Law Enforcement Officers/officials under
duress Contracted with PCCF (Adam Abdur-Rahim,
Musa Abdur-Rahim, Sushane Adams Heylinder, Troy
Anthony Sutton AND SeKou Rashid-Abdullah).
"State Court has No jurisdiction over Dispute
Arising within boundaries of Indian Country

(5)

despite fact that INDIAN Defendant consented to jurisdiction of State Court". SEE Nelson v. Dubois, 232 N.W. 2d. 54 (N.D. 1975).

Of the six (6) Tribal Officials, only Sushane Adams Heylinger was read his Miranda Rights by the Troopers of Troop R, which is a 5th Amendment violation of the U.S Constitution. SEE MIRANDA V. ARIZONA (1966).

At P.C.C.F. The six (6) Tribal Officials were subjected to Numerous Human Rights and Constitutional viol--ations, such as the following:

A. The tribal officials remained in RHU (Restricted Housing Unit) and/or MAX during their unlawful incarceration at PCCF which consist of the below:

1. The tribal officials were handcuffed, ANKLE shackled AND shadowed by 2-3 of Defendant Lowe staffers, everytime each tribal official would leave there jail cell. The tribal officials condition-S remained even when taking A shower. The tribal officials endured unnecesary vestraints. See Cottrell v Caldwell 85 F. 3d 1480 (11th Cir 1996);

2 The tribal officials were in 24 hr isolation in a single jail cell;

3. The Tribal Officials were physically, Mentally, emotionally AND verbally Assault--ed by Defendant Lowe staffers;

4. The Tribal Officials had 5-8 minute showers, while the Caucasian inmates had unlimited shower time; see <u>Shaw v Reno</u> (1993)

5. The Tribal Officials were last to read the new--spapers after the Caucasian inmates; if Defendant Lowe staffers did not discard the newpapers in the trash;

6. The Tribal Officials telephone calls were .21¢ per minute, for 2-3 days per week. While the Caucasian inmates used the video telephone for .02¢ per minute. The Tribal Officials phone calls were within the 10-20 minute durations. While the Caucasian inmates had unlimited time on the telephone AND video telephone everyday. The Tribal Officials were forbidden by Defendant Lowe staffers to partake into using the video telephone.

7. The Tribal Officials were deprived of clothes, food AND AND hygenic products. The Tribal Officials have lost a great amount of weight. The Tribal Officials were denied food, clothes AND hygenic products,

(9)

IN which the Tribal officials had purchased from Commissionary, by Defendant Lowe Staffers. While the Tribal Officials were falsely imprisoned in the cold, unheated and uninsulated dungeon of P.C.C.F. "The 8th Amendment guarantees adequate Heating." See <u>Keenan</u> v. <u>Hall</u> 83 F. 3d 1083, 1091 (9th Cir 1996) (citing <u>Gillespie</u> v. <u>Civiletti</u>, 629 F. 2d 637, 642 (9th Cir 1980).

"The Denial of Adequate clothing can inflict pain under the 8th Amendment". See <u>Walker</u> v. <u>Summer</u>, 14 F. 3d 1415, 1421 (9th Cir 1994)

8. Defendant Lowe Staffer, Physican Assistant, John Kleen would often taunt Principal Chief Tonia' Scott and D.C. Harris by repeat- -ly stating that in a DNA test, there was No Difference between A Rat, A Dog and An Indian. Then walk Away laughing.

9. Defendant Lowe, Staffer Allison Murphy on several occassions would man-handle D.C. Harris and shove D.C. Harris's face up against the wall, while D.C. was handcuffed and ankle shackled. Also D.C. Harris was forced to acc- -erate walking up and down stairs, there were times when D.C. Harris would slip and almost fall, while in handcuffs and ankle shackles.

⑩

10. D.C. Harris slipped and fell from a leak-ing sink that D.C. Harris was warning to Defendant Lowe Staffers for over two (2) weeks, prior to her accident. Each day the water amount would increase. The leak inside D.C. Harris jail cell only be-came repaired after D.C. Harris injuried her back, from the fall. D.C. Harris received NO MEDICAL Attention. Defendant Lowe staffers refused D.C. Harris every request for medical Attention. Currently, D.C. Harris Suffers from back pain, since her slip and fall incident in PCCF.

"Deliberate indifference to a prisoner's Serious illness or injury states a cause of action under ? 1983". See- Estelle V. Gamble, 429 US 97, 105 (1976) And Jett V. Penner, 439 F. 3d 1091, 1096 (9th Cir 2006).

11. D.C. Harris has a medical history of Asthma Defendant Lowe Staffers would taunt D.C. Harris, while D.C. Harris was having an Asthma Attack, that the only way she would receive treatment from her inhaler and/or herbal medication (that was in PCCF possession)

⑪

AND/or ACCESS to the oxygen MACHINE, if
one contract for services AND housing with
PCCF. One incident INVOLVED DefeNDANT Lowe
Staffer Nurse Nicole RAtNER. Each time, D.C
Harris iN a weakeN State would refuse
every extortion Attempt by DefeNDANT Lowe
Staffers. AND DefeNDANT Lowe Staffers
Would deny D.C. Harris MEDICAl treAtment.

" THE Deliberate iNDifference StaNDARD APP-
-lies to due process claims that correctioNAl
facility officials faileD to Address the med-
-ICAl NeeDs of A pretriAl detAinee" See
<u>Clouthier</u> v. <u>CouNty of CoNtrA CostA</u>, 591
F. 3d 1232, 1241-44 (9th CiR 2010).

12. D.C Harris AND PrincipAl Chief ToNiA Scott
Were threateNED by DefeNDANT Lowe Staffer
Officer R. GerADi, iN which Officer R. GerADi
INformED D.C. Harris AND P.C. Scott iN the
AlphA uNit iN front of A fellow Officer, Officer
WetKlow AND SixteeN (16) femAle iNmAtes
that both TribAl Officials were going to be
tAkeN to the woods to be KilleD AND be buried
with the rest of their people. LAter Officer
GerADi INformED two (2) (othER) femAle iNm-
-Ates that they NEEDED to be rAPED.

13. D.C. Harris WAS Stripped NAKED AND VIDEO taped several times by Defendant Lowes Staffers. (w/out D.C. Harris consent AND/or Authorization). "Strip Searches that are "Excessive, Vinictive, harassing, or unrelated to any legitimate penological interest", however, may be unconstitutional". SEE <u>Michenfelder</u> V. <u>Sumner</u>, 860 F. 2d At 332 (9th Cir 1988)

14. D.C. Harris WAS body slammed by Defendant Lowe Staffers Against the floors, walls AND bunk beds inside PCCF, causing her to endure bruising, aches AND pains through out her body.

15. D.C. Harris contracted COVID-19 in PCCF AND she received <u>NO</u> MEDICAL attention from Defendant Lowe staffers. "Prison officials must however, provide prisoner with "food, clothing Shelter, sanitation, medical care and personal safety". See <u>Johnson</u> V. <u>Lewis</u>, 217 F. 3d 726, 731 (9th Cir 2000) AND <u>Hoptowit</u> V. <u>Ray</u>, 682 F. 2d 1237, 1246 (9th Cir 1982).

16. D.C. Harris inhaled the smell of feces, daily in the Alpha Unit of PCCF, due to the septic problem. D.C. Harris effects included experiencing daily HEADAches AND Nausea.

(13)

"Subjection of a prisoner to lack of "Sanitation" that is severe or prolonged can constitute an infliction of pain within the meaning of the 8th Amendment," See <u>Anderson</u> v. <u>County</u> of <u>Keen</u>, 45 F. 3d 1310, 1314 (9th Cir 1995).

"Inadequate "Ventilation and Air flow" violates the 8th Amendment if it "undermines the health of inmates" and the sanitation of the ~~pent~~ penitentiary". See <u>Keenah</u> v. <u>Hall</u>, 83 F. 3d 1083, 1090 (9th Cir 1996) (Quoting <u>Hoptowit</u> v. <u>Spellman</u>, 753 F. 2d 779, 784 (9th Cir 1985).

17. Principle Chief Scott and D.C Harris were often used as a means to disciple Caucasian female inmates by Defendant Lowe Staffers. With taunts, such as, "You don't want to be treated like the Indians, do you? And "You don't want to be put in a cell with the Indians, do you?" P.C.CF. has a reputation of discrimination, segregation, isolation and Abuse to Non-Caucasian Inmates. See <u>Sylvester</u> <u>Surgnee</u> v. <u>Pike</u> <u>County</u> <u>Correctional</u> <u>Facility</u> <u>Employees</u>, 2, "12-CV-00832 MAM" Eastern District Court of Pennsylvania (2/17/2012)

18. Defendant Lowe Staffers practice an open Custom of White Supremacy, Sovereign Citi-

(14)

- ZENShip AND DISCRIMINATION AGAINST ANYONE Defendant Lowe Staffers has constituted AS "NON-White." D.C. HARRIS AND P.C. Scott were informed within A room full of people, including Defendant Lowe Staffers AND other inmates that D.C. HARRIS AND P.C. Scott food AND drinks Were the only two (2) meals that were rep- -eatly spit in by Neil Sheham (herself). (Ms. Sheham IS A Caucasian Drug Addict prostitute). Ms. Sheham is employed AS AN inmate unit worker AND serves meals to the inmates in the Alpha Unit in PCCF. When the Allegation WAS presented to Defendant Lowe Staffer, Stg Scully (Stg Scully is A former PCCF inmate, with a Criminal hist- -ory of domestic violence). Stg Scully informed DC Harris AND P.C. Scott that there would be NO Sanctions AGAINST Ms Sheham. Afterwards, Ms. Sheham stated to P.C. Scott AND D.C. HARRIS that "White is Right," in front of a room full of inmates AND Defendant Lowe Staffers. Ms. Sheham's SALIVA could be extremely harm- -ful to the health of D.C HARRIS AND P.C. Scott.

19. D.C. HARRIS WAS intentionally AND recklessly EXPOSED to large qualities of pepper spray fumes by Defendant Lowe Staffer, Lt. DAVID

Norman, in which produced an Asthma Attack.
Defendant Lowe staffers would not open any
windows in the Alpha Unit in PCCF, on July
01, 2020. The fumes were so great that the
unit officer Fabian walked out the unit in
her gas mask and closed the door behind her
leaving D.C. Harris to cough violently and
gasp for air on the floor. Lt. David Norman
turned off the water in the unit before
extinishing the 7'(ft) container of riot
pepper spray, for over (5) five hours. Days
later Lt. Norman would taunt D.C. Harris
by telling her, "Do you want some water",
and then laugh. D.C. Harris was denied
medical attention by Defendant Lowe staf-
-fers.

" The 8th Amendment guarantees medical care
without deliberate indifference to serious
medical needs is a sufficiently narrow
statement of the right for conducting the
clearly established inquiry." See Newell V.
Sanser, 79 F. 3d. 115, 117 (9th Cir 1996).

" Denial of medical attention to prisoners
constitutes an 8th Amendment violation if
the denial amounts to deliberate indifference
to serious medical needs of prisoners."

SEE Hallett V. Morgan, 296 F. 3d 732, 744 [16]
(9th Cir 2002)

The pepper spray incident of July 01, 2020.
begin, when P.C. Scott declared that she and
her Tribal officials wanted to leave P.C.CP
and that P.C. Scott and D.C. Harris had never
contracted with PCCF. Lt. Norman replied
to P.C. Scott that he was "tried of Scott's
Shit". P.C. Scott, D.C. Harris and the (16)
Sixteen female inmates inside the Alpha
Unit were sitting in their individual cells,
when Lt. Norman and seven (7) officers
in tactical gear and gas masked ente-
-red the Alpha Unit. Lt. Norman dispens-
-ed a 1'(ft) container of riot pepper
Spray completely and directly onto P.C.
Scott, when P.C. Scott was confined in
a 9'x 9' jail cell. The fumes were so consu-
-ming that the sixteen (16) female inmates
inside the Alpha Unit experienced violent
Coughing, uncontrolled urination and defec-
-ation on themselves. D.C. Harris induced
an Asthma Attack inside her 9'x 9' single
Cell. Lt Norman continued his intentional

recklessness by turning off the water in the Alpha Unit for over five (5) hours, and the window was closed. The Unit Officer Fabian walked out of the Unit for hours because even with her gas mask the fumes were too great for her to endure.

The pepper spray incident occurred because P.C. Scott proclaimed the Tribe's status and the lack of jurisdiction by the Courts of Pike County, PCCF and the Commonwealth of Pennsylvania per--taining to the tribal officials offenses.

"A prisoner may also establish an 8th Amendment violation by demonstrating that prison officials were deliberately indifferent to threats to the inmate's health" See Toguchi v. Chung, 391 F. 3d 1051, 1057 (9th Cir 2004).

"Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed" See Farmer v. Brennan, 511 US at 843 (1994).

Where prison officials used pepper spray to quell a fight and the pepper spray vapors migrated into other inmate's cells, a four hour delay in providing showers and medical attention to inmates suffering from the harmful effects from the pepper spray vapors. may violate the 8th Amendment." See Clement V. Gomez, 298 F. 3d at 905-06 (9th Cir 2002).

"As to the subjective prong of the 8th Amendment Analysis, prisoners must establish "prison officials "Deliberate indifference" to unconstitutional conditions of confinement to establish an 8th Amendment violation." See Wilson V. Seiter, 501 US at 303 (1991) and Farmer V. Brennan, 511 US at 834 (1994).

D.C. Harris was falsely imprisoned in PCCF for thirdteen (13) months and later transported to NSH. Currently, D.C. Harris is continuing her false imprisonment in N.SH, nearly 200 miles away from the Indian Title hamlets of San Creek and Pine Ridge. The Tribal Law Enforcement officers are continuing their false imprisonment in PCCF.

(19)

Defendant Lowe "Appears" to create a custom and Atmosphere, in which Defendant Lowe staffers felt comfortable violating the Tribal Officials Constitut-ional AND/or federal Statutory Rights. See Adickes V. S. H. Kress and Co., 398 US 144 (1970).

Defendant Lowe Staffers repeatly inflicted unwarra-nted physical, mental, emotional distress AND ASSA-ults on the Tribal Officials. See Robertson V. Family Dollar Inc, No. 14-3189, 205 WL 3400836 (E.D PA. May 27, 2015).

Defendant Lowe trained, supervised, delegated, Assignments AND monitored the Activities of PCCF Staffers, As such, Defendant Lowe is just as liable to the Tribal Officials AS Defendant Lowe Staffers for the Abuses, Assaults AND Constitutional violations inf--licted upon the Tribal Officials by Defendant Lowe Staffers. See Hunter V. Prisbe, 984 F. Supp. 2d 345, 354-55 (M.D. PA 2013).

On December 15, 2020, D.C. Harris was transferred to N.S.H from PCCP. D.C. Harris was handcuffed, Ankle Shackled AND Shadowed by two (2) Armed Pike County Police Officers. D.C. Harris was informed by Defendant Lowe Staffer, Sgt. Mills that she was being released. D.C Harris was

UNAWARE that she was being transported to a mental institution. If D.C. Harris was aware that her false imprisonment would have been continued in Norristown State Hospital, D.C. Harris would have refused. Two (2) months prior on October 14, 2020, Principal Chief Tonia Scott continued her false imprisonment in NSH from PCCF. In the same condition as D.C. Harris, handcuffed, ankle-shackled and shadowed by (2) two armed Pike County Police Officers.

D.C. Harris has No personal history of mental illness and/or family history of mental illness. D.C. Harris and the Tribal Law Enforcement Officers (also Principle Chief Tonia Scott) Never had a criminal history prior to the State criminal offenses conjuried by Defendant Raymond Tonkin.

D.C. Harris Never expressed nor implied consent to contract with the courts of Pike County and/or the Commonwealth of Pennsylvania. See International Shoe V. Washington, 326 US 310 (1945) and Grigsby V. CMI Corp, 765 F. 2d 1369, 1372 N.5 (9th Cir 1985).

The S.C.P.R.I.C. Tribal Government has.

(21)

No CONTRACT for CIVIL AND/or CrimiNAL offeNses with the State of PeNNsylvaNia. The Court of jurisDictioN pertaiNiNg to offeNses oN the INDiaN Title hamlets of SAW CreeK AND/or PiNe RiDge is the S.C.P.R.I.C. Tribal Court. The Courts of PiKe CouNty has No subject-Matter jurisDictioN Neither does DefeNDANt RaymoND ToNKiN, the District AttorNey of PiKe CouNty. SEE EvigARD V. UNiteD States 862 F. 2d At 204 (9th CiR 1988).

As such, the Tribal OfficiAls crimiNAl offeNses Are iNValiD becAuse the offeNses/charges OccurreD oN the INDiAN Title hamlet of PiNe Ridge:

1. Keeba Scott Harris, CP-52-CR-0000690-2019
2. AdAm Abdur-Rahim, MJ-60304-CR-206-2019
3. Musa Abdur-Rahim, MJ-60304-CR-202-2019
4. SushANe Adams HeyliNger, MJ-60304-CR-203-2019
5. Troy ANthoNy SuttoN, MJ-60304-CR-207-2019
6. SeKou RashiD Abdullah, MJ-60304-CR-205-2019

P.C Scott AND the six (6) Tribal OfficiAls Arrest AND heariNg receiveD A highly sigNificANt AND provAble AmouNt of uNfavorAble locAl pre-trial publicity. IN which, the meDiA protrAyeD the six (6) Tribal OfficiAls AND P.C. Scott As terr--orists oN the INDiAN Title hamlet of PiNe RiDge. Their CASE is A high profile CASE IN

PIKE County/Lehman Township, PA, that has received a great deal of MEDIA Attention AND continues to be in the News. Such as on television, the RADIO, ~~and~~ on the internet, Courtroom reporter coverage, blogs AND the comments that follow News Articles AND Etc.; which has directed ANger ~~towards~~ towards the tribal officials AND P.C. Scott. Due to Defendant Tonkin intentional AND with Malice Suppression AND fabrication of evi- -Dence. The reality is that the Pike County Recorded INDIAN Title hamlet of Pine Ridge is in the jurisdiction of the S.C.P.R.I.C. Tribal Government AND Not in the jurisdic- -tion AND Authority of the Common wealth of Pennsylvania AND/or the Courts of PiKE County

The main Accuser AND only witness that was Able to visibly Affirm (Affirm) the Tribal official Presents, has Died of COVID-19, on May 25, 2020. His Name was John Derbyshire (the Same individual, in which P.C. Scott AND the tribal officials were ejecting from the Pine Ridge hamlet on November 18, 2019, when the P.S.P. Troopers illegally AND unlawfully tres- -passed on tribal Land AND Arrested the

(23)

Tribal Officials AND P.C. Scott. the Tribal Officials AND P.C. Scott were in the process of ejecting Mr. Derbyshire before the Arrest.

Yet Defendant Tonkin refuses to dismiss the Criminal offenses Associated with Mr. Derbyshire from the Tribal Officials Criminal charges.

Defendant Tonkin is Violating the 6th Amendment of the U.S. Constitution, the Confrontation Clause. In Crawford v. Washington, 541 US 36 (2004)," the Supreme Court, Justice Scalia Stated that," Holding that the Confrontation Clause excludes any Evidence that is "test- -imonial", in Nature if the witness is Not Availible."

Defendant Tonkin was well aware of P.C. Scott AND the Tribal Officials Status AND the Pike County recorded Indian Titles of Saw Creek AND Pine Ridge were in the Jurisdiction of the S.C.P.R.I.C. Tribal Gov- -ernment. Defendant Tonkin was presented the Pike County recorded Indian Titles of Saw Creek AND Pine Ridge during the sev- -eral below Occassions:

A. P.C. Scott presented A copy of the Indian Titles of Saw Creek AND Pine

(24)

Ridge to P.S.P. Trooper Quinn on 11/18/19, on the Pine Ridge hamlet, when the P.S.P. Troopers invaded and overthrew the hamlet of Pine Ridge;

B. P.C. Scott presented Defendant Tonkin another copy of the Indian Titles of Saw Creek and Pine Ridge as an Exhibit of P.C. Scott's, "Petition to Dismiss (the State) Criminal Charges Due to Defect of Jurisd--iction", which was mailed to Defendant Tonkin and confirmed by the Clerk of the Courts of Pike County on January 2020 and February 2020;

C. P.C. Scott personally hand delivered another copy of the Pike County recorded Indian Title of the Saw Creek and Pine Ridge hamlets, to Defendant Tonkin, during a Pike County Court Preliminary hearing of 12/18/19. Copies were also faxed to Defendant Tonkin by the S.C.P.R.I.C. Tribal Council 12/19/19;

D. Defendant Tonkin was presented another copy of the Pike County recorded Indian Titles of Saw Creek and Pine Ridge, during D.C. Harris Habeas Corpus filing of July 2020 (20CV0962) and in P.C Scott

HAbeAs Corpus filing of MAy 2020 (20CV0828
When the U.S. District Court of MiDDle Penn
-NSylvAniA delivered the copies As Exhibits.

IN All five(5) CONTACtS, DefeNDANt TonkiN
chose to disregard the INDIAN Titles of SAw
CreeK AND PiNe RiDge AND fAbricAte A NArr-
-Ative that P.C Scott AND the six (6) TribAl
Officials were terrorists. IN reAlity, the
CriminAl trespASSers AND terrorists were
the PSP AND the iNDiviDuAl, whom wAs iN
the process of being lAwfully ejected by
P.C. Scott AND the six (6) TribAl Officials.
P.C. Scott's INDIAN Titles were recorDED by
the PiKe CouNty Recorder of LAND Records,
SHAroN Schroeder. IN ACCordANce to PA. ReAl
EstAte AffiDAvits Affecting Titles Act of
Nov. 5, 1981, P. L. 328, No. 118, c.L. 68, providing
the recorDing of certAiN AffiDAvits Affect-
-iNg the Title to ReAl EstAte AND for their
ADmissibility iNto eviDeNce.

DefeNDANt TonKiN "AppeArs" to "Act" uNeth-
-icAl iN interpreting the lAws of the
CommonweAlth of PeNNSylvANiA. DefeNDANt
TonKiN hAs AN obligAtion to serve AND Not
to victimize As A prosecutor. DefeNDANt
TonKiN swore to uphold the lAws of our

NATION. Yet DEFENDANT TONKIN VIOLATED his obligation to SERVE AND NOT to VICTIMIZE AS A prosecutor to the public.

DEFENDANT TONKIN is VIOLATING the Tribal Officials 14th AMENDMENT of the DUE Process CLAUSE. The Tribal Officials have been INCAR- -CERATED for OVER NINETEEN (19) months IN both PCCF AND NSH. IN UNITED STATES V. GONZALES- CLAUDIO, 806 F. 2d 334, 341 (2d CIR 1986)," DETENTION that has lasted for fourTEEN (14) months AND without SPECULATION is SCHEDULE to last consi- -DERABLY longer, points strongly to a DENIAL of DUE Process".

DEFENDANT TONKIN is VIOLATING the LAWS of the COMMONWEALTH of PENNSYLVANIA, PA.R Crim Rule 1100 AND 600 (b):

"It is the prompt trial rule, which was Adopted by our SUPREME Court, PURSUANT to its Rule- -MAKING POWERS UNDER Article 5, Sec 10 c of the PENNSYLVANIA Constitution, A Key PROVISION is that A criminal DEFENDANT must be tried with- -IN 180 DAYS of the DATE of filing A criminal Complaint. If he is NOT, then the charges must be dismissed with PREJUDICE." SEE Lewis V. City of HARRISBURG, 158 PA. CommonwEALth Court, 318 (1993) 631 A. 2D 803 AND CommonwEALth V LONG, 258 PA. Superior Court, 251 (1978) 392 A. 2d. 779.

The Tribal Officials Criminal case filing and date of filing is stated as below:

1. Keeba Scott Harris (CP-52-CR-0000690-2019), dated 11/18/19
2. Adam Abdur-Rahim (MJ-60304-CR-206-2019), dated 11/18/19
3. Musa Abdur-Rahim (MJ-60304-CR-202-2019), dated 11/18/19
4. Sushane Adams Heylinger (MJ-60304-CR-203-2019), dated 11/18/19
5. Troy Anthony Sutton (MJ-60304-CR-207-2019), dated 11/18/19
6. Sekou Rashud Abdullah (MJ-60304-CR-205-2019), dated 11/18/19

The Tribal Officials criminal filing dates all exceed the 180 days without a trial, as such the Tribal Officials' state charges should have been dismiss-ed with prejudice by the Commonwealth of Pennsylvania. Yet Defendant Tonkin, the agent of the Commonwealth of Pennsylvania refuses to dismiss the Tribal Officials state Criminal charges.

Defendants, Jessica Keith, Craig Lowe and Raymond Tonkin refuse to recognize the inherent sovereignty of the S.C.P.R.I.C. Tribal Government and/or the Pike County recorded Indian Titles of Saw Creek and/or Pine Ridge. As well as acknowledge D.C. Harris Tribal citi--zenship and/or tribal status of all six (6) Tribal Officials with the S.C.P.R.I.C Tribal Government.

D.C. Harris has NO state contracts, yet she is labeled as "Black" (under color of Law) by Def--endants Jessica Keith, Craig Lowe and Ray--mond Tonkin. All three (3) parties were

Presented with D.C. Harris tribal identification.
See Exhibit N.

The Tribal Officials' tribe is recognized by the
States of New York and Pennsylvania. See Exhibit
A, Exhibit B, Exhibit C and Exhibit D

In F. Cohen Handbook of Federal Indian Law,
"What is State Recognition" (2013) "... or a State
may recognize a Native American (Indian)
tribe with simply a letter from a State Agency
that acknowledges the tribe."

In McClanahan V Arizona State Tax Commission
411 US 164 (1973), "From the very first days of
our government, the federal government had
been permitting the Indians largely to govern
themselves free from State interference." ID at
686-687.

"Indian tribes are not States, they have a
Status higher than that of States." See Native
American Church V Navajo Tribal Council (1959).
"The Conduct of An Indian Tribe is not State
Action." See Toledo V Pueblo Jemez (1954/1966)

25 USCS 3651(2), "Indian tribes are sovereign
entities and are responsible for EXERCISE govern-
-ment Authority over Indian land.
"Indian Tribes have been exercising political
and cultural sovereignty since long before the

establishment of the United States, and their
sovereignity is based not on any federal authority
but on "Principles of International Law", See Cohen's
Handbook of Federal Indian Law, "What is Federal
Indian Law", at 1.

"Indian tribes have power to make their own
substantive law in internal matters, and to
enforce that law in their own forums", See
Santa Clara Pueblo v. Martinez, 436 US 49, 98
S. Ct. 1670, 56 L. Ed. 2d 106 (1978);

In Lonewolf v. Hitchcock, 187 US 553 (1903);
"The Case held that the regulation of Indian
Affairs is a political question, government
by Congress and not subject to judicial review
the Court must presume Congress will only
exercise plenary power in "Good Faith".

In Williams v. Lee, 358 US 217, 220 (1959),
"Tribes possess the inherent authority," to
make their own laws" and to be ruled by
them". And "Within the boundaries of Indian
lands, tribes can regulate like, any other
government". See Atkinson Trading Post v.
Shirley, 532 US 645 (2001).

In United States v. Wheeler, 435 US 313, 322
(1978) "It has long history which predates the
founding of the United States"; "As self-
governing sovereign political communities",
which establishes their claim of sovereignty

Id At 323.

"Tribal Sovereign immunity does not derive from An Act of Congress, but rather is one of the inherent powers of a limited sovereignty, which has never been extinguished" SEE Cherokee Nation V. Babbit, 117 F. 3d 1489 (D.C. Cir 1997).

"The Doctrine of Tribal immunity extends to individual Tribal officials Acting in their Representative CAPAcity AND within the Scope of their Authority". SEE Kiowa Tribe V. MAnufActuring Technologies (1998) AND C SL Enterprise V. Citizen BAND Potawatomi Tribe of OklAhoma (2001).

In the Dry V United States (2000) case, "Tribal LAw Enforcement Officers Act under the inherent Sovereignty of the INDIAN Tribe".

In retAliAtion, for D.C. HArris Not pleading guilty to StAte charges of terrorism, trespa--ssing AND etc., D.C. HArris wAs Deemed legally incompetent in A motion by Defendant Tonkin.

D.C. HArris wAs involuntarily committed into Norristown StAte HospitAl based upon the motion stArted by Defendant Tonkin.

On March 11, 2021, Deputy Chief Harris was given an ultermatium by Nurse Ojo that D.C. Harris either ingest a 10mg pill of the Anti-psychotic medication, Zyprexa or D.C. Harris would be rest-vained by the N.S.H., Forensic Security Employees and forcefully injected into her buttock with the Anti-psychotic medication known as Zyprexa. D.C. Harris complied because she was well aware of the torture and abuse D.C. Harris sister, Principal Chief Tonia' Scott was subjected to in Unit C1, two (2) weeks prior. In which D.C. Harris sister was brutily injected with a combination of Zyprexa and Benadryl into her buttock.

D.C. Harris was informed by Nurse Ojo that she must ingest a 10 mg pill of Zyprexa daily as directed by Defendant Jessica Keith employee, Dr. Shaker. D.C. Harris recalled a conversation with Dr. Shaker, in which Dr. Shaker conveyed to D.C. Harris that "the purpose of Anti-psychot-ic medications were to make the patients easiler to comply to the doctor's demands."

On March 18, 2021, D.C. Harris, Zyprexa dosage was increased to 15mg daily because

(32)

D.C. Harris had refused to contract with the Courts of Pike County employee, Attorney Oressa Philiphs Campbell. The same Oressa Philiphs Campbell and Dr. Michael Church that conspired with Defendant Raymond Tonkin and Gregory Chelak (Pike County Court of Common Pleas, "President Judge") to committ D.C. Harris into the false imprisonment in N.S.H. (35 C.J.S. 9-10) and into the unauthorized custody of Defendant Jessica Keith.

D.C. Harris effects with the Zyprexa consist of fatigue and dizziness. D.C. Harris protested to Nurse Ojo and Dr. Shaker, yet her declaration fell on deaf ears that D.C. Harris was reluctant to indulge into the realm of Anti-psychotic medications.

D.C. Harris refusal to ingest the Zyprexa, Anti-psychotic is in accordance to the following:

1. "An inmate right to refuse Anti-psychotic medication". See <u>Riggins v. Nevada</u>, 504 US 127 (9th Cir 1992) and <u>Washington v. Harper</u>, 494 US 210 (9th Cir 1990);

2. "Prisoners, do however, have a liberty interest in <u>Not</u> being transferred for

INvoluNtary psychiatric treatment." See <u>Vitek</u>

V <u>Jones</u>, 445 US 480, 494 (1980);

3. "A magistriate judge is prohibited from issuing
INvoluNtary Medication Orders." See <u>Sell</u> V.
<u>UNited States</u>, 539 US 166 (9th Cir 2003) AND
<u>UNited States</u> V. <u>Rivera-Guerrero</u>, 426 F 3d.
1130 (9th Cir 2005).
    If A magistriate judge is prohibited from
issuing iNvoluNAry Medication Orders than
A political subdivision/private corporation's
employee of the Courts of Pike County "judge"
Gregory Chelak's Orders Are therefore iNvalid.

4. D.C. Harris has <u>NO</u> personal history of mental
illness AND D.C. Harris family members have
<u>NO</u> history of mental illness. As such D.C.
Harris was involuntarily committed into NSH,
contradicting the <u>Pennsylvania Mental
Health Act of 50 PA. Cons. Stat ANN S.7301</u>
(b), Clear AND Present danger to others shall
be shown by establishing that within the
past 30 days the person has inflicted or
Attencpted to inflict serious bodily harm
On Another AND that there is a reasonable
probability that such conduct will be
repeated.

AND/or

50 PA Cons. Stat. Ann. S. 7304(A)(2) - A per-son, who is severely mentally disabled AND IN NEED of treatment may be made subject to Court-Ordered involuntary treatment upon A determination of clear AND present danger under 301(b)(1) (Serious bodily harm to others) or Section 301(b)(2)(I) (inAbility to care for himself, creat-ing A danger of Death or serious harm to him-self or 301(b)(2)(ii) (Attempted Suicide) or 301 (b)(2)(iii) (Self-mutilation).

D.C. Harris has maintained a healthy lifestyle. D.C. Harris does NOT smoke nor drink Alcohol nor indulge in Narcotics. She has Never had A desire to engage, Just As D.C. Harris Never had a criminal history, until conjured by Defendant Raymond Tonkin.

DC. Harris does NOT eat beef, pork, eggs AND etc. Yet Dr. Shaker chose to force/coerc DC Harris to ingest into her body Anti-psy-chotic medications. Thus, in AN effort to expose D.C. Harris to tremors, shaking, numbness, tingly feelings, swollen glands, muscle aches, severe weakness, severe skin rashes, unusual bruising, yellowing

33

of the skin AND/or eyes, pain in the arms AND/or legs. As well as serious movement dis-orders that may not be reversible AND/or problems with speech AND/or memory, which are some of the common side effects of the Anti-psychotic medication known as Zyprexa. SEE Exhibit O AND Exhibit P.

"A large portion of the medical community believes that Anti-psychotic medications causes long term-effects AND irreversible harm AND have a high chance of producing trial-related AND even fatal side effects AND such drugs are NOT universally considered medically appropriate in light of other. "Alternative treatments" SEE "The Case Against Anti-psychotics A 50 Year Record of Doing More Harm than Good, A Common Medical Hypotheses," 62 5 (2004) AND "Are the Sch-izophrenics for Whom Drugs may be Unnec-essary or Contradicated?" International Pharmacopsychiatry 13: 100 (1978).

D.C. Harris has NO personal history AND/or A family history of mental illness. There only "Appears" to be AN issue of mental illness,

When D.C. Harris AND Principle Chief Tonia Scott refused to Abandon the Indian title. hamlets of Saw Creek AND Pine Ridge, according to Defendent Raymond Tonkin (Pike County District Attorney) AND Gregory Chelak (Pike County Court of Common Pleas "judge")

"The requisite CAUSAL connection may be established when AN official sets in Motion a "series of Acts by others, which the Actor knows or reasonably should know" would cause others to inflict Constitutional harms." See Wong v. United States, 373 F. 3d 952, 966 (9th Cir 2004).

Dr. Shaker Actions are a deliberate indifference AND/or AN intent to inflict great harm to D.C. Harris health AND well being. Dr. Shaker disregarded AN excessive risk to D.C. Harris safety, which is medically unacceptable under the circumstance. When D.C. Harris questioned Nurse Ojo About her usage (forced) of the medication, Nurse Ojo claimed that a Pike County Court of Common Pleas Court Order Addressed that D.C Harris is to be medicated with AN Anti-psychotic medication. The Pike County Court Order was signed by Gregory. Chelak, After a psychological evaluation by Dr. Michael Church AND Affirmed by Attorney

37

Oressa Philiphs Campbell. See Exhibit O

D.C. Harris had NEVER conducted and/or consented to Dr Michael Church for a psychological evaluation. D.C. Harris had NEVER retained the legal services of the Pike County employee, Oressa Philiphs Campbell (whom is not license to practice Native American/Indian Law). Yet both Dr. Michael Church and Oressa Philiphs Campbell prejuried documentations to Gregory Chelak and Defendant Raymond Tonkin, in an effort to involuntarily committ D.C. Harris into false imprisonment at Norristown State Hospital, into the unauthor- -ized custody of Defendant Jessica Keith.

Both Dr. Michael Church and Oressa Philiphs Campbell conspired with Defendant Raymond Tonkin and Gregory Chelak to violate D.C. Harris constitutional and/or federal statutory rights by a meeting of the minds, to dispose of and re- -move D.C. Harris from the Pike County recorded Indian Title hamlets of Saw Creek and Pine Ridge. Thus, to harbor D.C. Harris in N.S.H, nearly 200 miles away from the Indian Title hamlets of Saw Creek and Pine Ridge.

Nevertheless, Dr. Shaker, (employee of Defendant

Jessica Kately) as a medical professional was/is well aware that D.C. Harris did not display any of the Attributes of 50 PA. CONS. Stat. ANN. S. 7304(A)(2) AND/or 50 PA. CONS. Stat. ANN. S. 7304 (b), to be medicated. As well as D.C. Harris has a Constitutional right to refuse treatment.

"To show a deliberate indifference," must show that the course of treatment the doctor chose was medically unacceptable under the circum-stances and that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health". See Jackson V. McIntosh McIntosh, 90 F. 3d. 330, 332 (9th Cir 1996).

The parties of Defendant Raymond Tonkin, Dr. Michael Church, Dressa Philiphs Campbell and Gregory Chelak conspired to deprive D.C. Harris Federal Statutory and Constitutional rights by depriving D.C. Harris her right to Liberty.

"To prove a conspiracy between the State and private parties under 2 1983, the Plaintiff must show an Agreement or meeting of the minds, to violate Constitutional rights. To be liable, each participant in the conspiracy need not know the exact details of the plan but each

69.

must at least share the common objective of the conspiracy". See MENDOCINE ENVT'R CTR V. MENDOCINE County, 192 F. 3d. 1283, 1301-02 (9th CIR 1999).

"Where a private party conspires with State officials to deprive others of Constitutional rights however, the private party is acting under color of State Law." See Crowe V. County of San Diego, 608 F. 3d 406, 440 (9th CIR 2010).

"A Plaintiff who establishes liability for deprivation of Constitutional rights Actionable under 42 USC 1983 is entitled to recover, compensatory damages for All injuries suffered as a cons-equence of those deprivations". See Borunda V. Richmond, 885 F. 2d 1384 (9th CIR 1988).

42 USC 1985 (3)

"The language requiring intent to deprive of equal protection ... means that their must be some racial, or perhaps otherwise class based, invidiously discriminatory Animus behind the conspirators' action". See Butler V. Elle, 281 F. 3d 1014, 1028 (9th CIR 2002).

In Griffin V. Breckenridge, 403 US 88 (1971),

" The Supreme Court, clarified the reach of Section 1985 (3) is limited to private conspiracies predicated on "Racial," or perhaps otherwise class based invidiously discriminatory Animus." Id at 102.

In LAKE V Arnold, 112 F. 3d. 682, 685 (3d Cir 1997)," Thus, 1985 (3) permits an action to be brought by one injured by a conspiracy formed for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges or immunities under the laws 42 USC ¶985 (3)."

DC Harris ordeal is similar to Officer Nicole Palmer. Officer Palmer was raped and sexually harassed by a fellow Pennsylvania State Police, Trooper at Ms. Palmer's place of employment at P.S.P., Blooming Grove Station (Troop R). The same P.S.P. Blooming Grove Station, Troopers that overthrew the S.C.P.R.I.C. Tribal Government Officials and illegally and unlawfully trespassed on the Indian Title hamlet of Pine Ridge. Officer Palmer was also committed into a Mental institution, After she had reported the rape and sexual harassment incidents.

(41)

LiKE D.C. Harris, Ms. Palmer was involuntarily committed into the Mental Hospital; while she-ADowED by two (2) Armed P.S.P Troopers. See Palmer V Pennsylvania State Police, Civil No. 3 (17-CV00371),filED iN the Middle District of Pennsylvania.

D.C. Harris daily routine At N.S.H consist of Yells, Screams, Physical AND verbal Assaults between the staffers AND the medicate Schizo--phrenic patients As well As medicated Schizoph--renic patients upon other medicated Schizophr--enic patients) confrontations, D.C Harris suffers from insomina, fatigue, stomach discomfort, irritability, heart palpitations, shortness of breathe, headaches, muscle tension AND Anxiety. At N.S.H. D.C. Harris had had phsyical AND verbal Altera--tion with medicated Schizophrenic patients At Norristown State Hospital. D.C. Harris is forced to ingest A 15mg of Zyprexa daily or she would be threaten with painful buttock or Arm inject--ions of Zyprexa, As well As restrained by the N.S.H. FSE Staffers.

As such Plaintiff entreats the Court to restrain the Tribal Official false imprisonment At. Norristown State Hospital, for D.C Keeba Scott

42

Harris, located at 1001 Sterigere Street, B51-B2, Norristown, PA 19401. As well as restrain the false imprisonment for the S.C.PRIC Tribal Law Enforcement Officers:

1. Adam Abdur-Rahim
2. Musa Abdur-Rahim
3. Sushane Adams Heylinger
4. Troy Anthony Sutton
5. Sekou Rashid Abdullah

At Pike County Correctional Facility, located at 175 Pike County Blvd, 18428, Lords Valley, PA.

Plaintiff, prays to the Court to declare the Commonwealth of Pennsylvania criminal charges Against the Tribal Officials invalid, in accordance to 18 USC 3626 (A)(1)(A).

"Complaint under 42 USC 1983 should have been treated as petition for Habeas Corpus, where State prisoner requested Declaration that their conviction was invalid and injunction Restraining their further imprisonment." See Bennett v. Allen, 396 F. 2d 788 (1968).

"To grant, injunction relief concerning serious risks to the inmate's safety, the Court must find that at the time the relief will be granted there is still a serious, present risk to the inmate and the prison officials are still

43

Acting with deliberate indifference to the risk.
See Helling V. McKinney, 509 US 25, 35-36 (1993)
And Farmer V. Brennan, 511 US At 845-47 (1994).

Plaintiff beseech the Court to issue the pre-
-liminary injunction and/or temporary restrain-
-ing orders against defendants, Jessica Keith
(the gate keeper of Norristown State Hospital)
and Craig Lowe (the gate keeper of Pike County
Correctional Facility) due to the immediate and
irreparable harm suffered and is currently
suffered by the Tribal Officials because def-
-endants, Jessica Keith and Craig Lowe un-
-lawful and illegal conduct remains unabated.

Wherefore, Plaintiff, prays to the Court for
prospective injunctive relief for the slander,
libel, physical, emotional and mental abuses
incurred, medical expenses, post dramatic
stress disorder, permanent disability, loss of
Normal life, humilation and embarrassment,
severe emotional distress, some overall
which may be permanent and other injuries.
The Tribal Officials may continue to suffer
indefinitely from the actions by the State
Actors Defendant Raymond Tonkin and Def-
-endant Jessica Keith.

(44)

Plaintiff also prays to the Court for injunctive relief from Defendant Craig Lowe for the inten-tional tort malice, infliction of emotional dis-tress, slander, failed to use reasonable care, reckless disregard of malice by action. See Aaron Hope, et al v. Clear Doll, in official capacity as Warden, York County Prison, et al, 1:20CV00586 J&J Document 11, filed 4-7-20.

Plaintiff also prays that the Court hold the Defendants, Raymond Tonkin, Jessica Keith and Craig Lowe liable for the federal statutory and Constitutional violations that was/is inflicted against the Tribal Officials by the actions of Defendants: Defendant Craig Lowe, Defendant Raymond Tonkin and Defendant Jessica Keith.

" Section 1983 provides a cause of action against persons acting under color of state law, who have violated rights guaranteed by the Constitution". See Buckley v City of Redding, 66 F. 3d 188, 190 (9th Cir 1995).

"Section 1983 can provide a cause of action against persons acting under color of state law, who have violated rights guaranteed by federal statutes". See AlohaCare v.

(45)

Hawaii Dept. of Human Servs, 572 F. 3d. 740, 745 (9th Cir 2009).

"A defendant has acted under color of State Law where he or she has "Exercise Power" possessed by virtue of State Law and made possible only because the wrongdoer is cloth-ed with the Authority of State Law". See Florer v Congregation Pidyon Shevuyim, N.A., 639 F. 3d 916, 922 (9th Cir 2011) and Anderson v. Warner, 451 F. 3d 1063, 1068 (9th Cir 2006).

"State and Local Officials may be sued for injuntive relief because that is prospective relief." The U.S. Supreme Court state," State and Local Officials may be sued in their personal capacity where the suit seeks to impose individual personal liability on the government officer for Actions taken under color of State Law with the badge of State Authority under the 14th Amendment. Plai-ntiff may bring an action under 1983, if their Rights, Privileges or immunities secured by Federal Statutory Laws were violated." See Monell v. Dept. of Social Services, 436 US 658 (1978).

(46)

## Defendants

Plaintiff prays to the Court to hold Defendant Jessica Keith liable to the S.C.P.R.I.C Tribal Officials for deprivation of the Tribal Off--icials constitutional and federal statutory rights as well as Liberty, in Defendant Jessica Keith's official and/or individual capacity; the Tribal Official is D.C. Harris (Deputy Chief Keeba Scott Harris).

"Even if the deprivation represents an abuse of authority or lies outside the authority of the official, if the official is acting within the scope of his or her employment, the person is still acting under Color of State Law." See Anderson v. Warner, 451 F. 3d at 1068-69 and Shah v County of Los Angles, 797 F. 2d. 743, 746 (9th Cir 1986).

"Personal capacity suits seek to impose person--al liability upon a government official for action [the official] takes under "Color of State Law". See Kentucky v. Graham, 473 NS 159, 165 (1985). "State officials sued in their official capacity, for injunctive relief, however, are persons for purposes of

(47)

} 1983". See Guam Soc'y of Obstetricians & Gynecologists V. Ada, 962 F. 2d 1366, 1371 (9th Cir 1992).

Plaintiff prays to the Court to hold Defendant Craig Lowe liable to the S.C.PRIC Tribal Officials: Keeba Scott Harris, Adam Abdur-Rahim, Musa Abdur-Rahim, Sushane Adams Heylinger, Troy Anthony Sutton and Sekou Rashid Abdullah, for deprivation of the Tribal Officials' Constitutional and federal Statutory rights, as well as Liberty, in Defendant Craig Lowe's official and/or per-sonal (individual) capacity.

"It is well settled that a person subject to liability can be an individual sued in an individual capacity". See Devereaux V. Abbey, 263 F. 3d 1070, 1074 (9th Cir 2001) (En banc) or in an official-capacity". See Hartmann V. Cal. Dept of Corr & Rehab, 707 F. 3d 1114, 1127 (9th Cir 2013).

"A prisoner may also establish an 8th Amen-dment violation by demonstrating that prison officials were deliberately indifferent to (threats)

threats to the inmate's health". See Toguchi v. Chung, 391, F. 3d 1051, 1057 (9th Cir 2004).

Plaintiff prays to the Court to hold Defendant Raymond Tonkin liable to the Tribal Officials: Keeba Scott Harris, Aalani Abdur-Rahim, Musa Abdur-Rahim, Sushane Adams Heylinger, Troy Anthony Sutton and Sekou Rashid Abdullah, for deprivation of the Tribal Off-
-icials constitutional and federal Statutory rights as well as Liberty, the deliberate fabrication of evidence and the reckless suppression of evidence, in Defendant Raymond Tonkin official and/or personal (individual) capacity.

"A prosecutor may be held liable in his/her individual capacity." See Stockdale et. Al v Helper, et. Al, No 3 (2017) (CV0024) Document 27 " M. D. Tenn 2017".

"Prosecutorial immunity... does not protect them from suits for injunctive relief." See Gobel v. Maricopa County, 867 F. 2d At 1203 N.6 (9th Cir 1989).

(49)

Defendant Raymond Tonkin is liable to the Tribal Officials for placing/forcing the Tribal Officials into Pike County Correctional Facility where their Human Rights were violated.

" Holding Arrestees in Detention facilities where the conditions of confinement are constitutionally infirm". See Gobel V Maricopa County, 867 F. 2d At 1206 (9th Cir 1989).

" Generally employees of the State are acting under "Color of State Law", when acting in their official capacity". See West V Atkins, 487 US 42, 49 (1988) And McDade V West, 223 F. 3d 1135, 1140 (9th Cir 2000).

⚘ In Avalos v. Baca, 596 F. 3d 583, 587 (9th Cir 2010), "Holding that in order to be individually liable under § 1983, individual must personally participate in Alleged rights deprivation".

Plaintiff entreat to the Court to charge Defendants, Jessica Keith, Raymond Tonkin and Craig Lowe, in Accordance to 18 USC 242 (Deprivation of Rights under Color

of Law) AND 18 USC 241 (Conspiracy Against Rights), for KIDNAPPING AND violat--ing the Tribal Officials: Keeba Scott Harris Adam Abdur Rahim, Musa Abdur Rahim, Sushane Adams Heylinger, Troy Anthony Sutton AND Sekou Rashid Abdullah, Constitutional AND Federal Statutory Rights by abusing AND using the badge of State Authority.

" In contrast to a State or State Agency, A State official may be sued in his or her official capacity under ]1983, but only for prospective injunctive relief. This is because an official capacity actions for prospective relief are Not treated as actions against the State." See Will v Mich. Dept of State Police, 491 US at 71 No. 10 (1989).

"A State official may be sued under ]1983 in his or her individual capacity for Damages". See Kentucky v. Graham, 473 US 159, 165 (1985).

Plaintiff Also seeks monetary relief from Defendant Raymond Tonkin, Defendant

Jessica Keith AND Defendant Craig Lowe, due to each parties' infliction of depriving the Tribal Officials: Keeba Scott Harris, Adam Abdur-Rahim, Musa Abdur-Rahim, Troy Anthony Sutton, Sushane Adams Heylinger AND Sekon Rashid Abdullah, Constitutional AND federal Statutory rights guaranteed by the UNITED STATES Constitution AS UNITED STATES citizens.

"The Doctrine of Ex Parte Young, 209 US 123 (1908), that the 11th Amendment does not bar suits for prospective decl--aratory or injunctive relief against State officials in their official capac--ity is well recognized exception to the general prohibition of the 11th Amendment". SEE Idaho V. Coeur d' Alene Tribe of Idaho, 521 US 261, 269 (1997).

"Compensatory damages include actual losses, mental anguish AND humiliation, impairment of reputation AND out-of-pocket losses". SEE Borunda V. Richmond, 885 F. 2d at 1389 (9th Cir 1988)."Compensatory damages... ARE mandatory". SEE Smith V. Wade, 461 US



30, 52 (1983).

"A plaintiff who establishes liability for Deprivation of Constitutional rights Action- -Able under 42 1983 is entitled to recover compensatory Damages for All injuries suffered as a consequence of those deprivations". See BORUNDA V Richmond, 885 F. 2d 1384 (9ᵗʰ Cir 1988).

"Punitive Damages Are Availible under 1983". See DANG V. Cross, 422 F 3d 800, 807 (9ᵗʰ Cir 2005).

"Holding that oppressive conduct is A proper predicate for punitive Damages under 1983". See DANG V Cross, 422 F. 3d At 807-09 (9ᵗʰ Cir 2005).

"A government official "cannot be expected to predict the future course of Constitutional Law, but[the official], will NOT be shielded from liability" for acts that violate clearly established Constitutional Rights". See PROCUNIER V. NAVARETTE, 434 US 555, 562 (1978).



28 USC 1404 (A) (Venue)

The Tribal Official case is a high profile case in Pike County/Lehman Township, PA that has received a great deal of media attention and continues to be in the News, such as on television, the radio, on the internet, courtroom reporter coverage, blogs and the comments that follow News Articles and etc, which has directed Anger towards the Tribal Officials, due to Defendant Raymond Tonkin intentional and with malice suppression of evidence and fabrication of evidence, that the Pike County recorded Indian Title hamlet of Pine Ridge is in the jurisdiction of the Saw Creek and Pine Ridge Indian Communities Tribal Government jurisdiction and Not in the jurisdiction and Authority of the Commonwealth of Pennsylvania and/or the Courts of Pike County.

Plaintiff fears that the Tribal Officials will Not/would not receive a fair hearing and/or Trial because of the prejudice and/or bias of Defendant Raymond Tonkin, before whom the Court is pending.

There will be a selective jury pool that is likely to have a personal connection

54

to the ACCUSER/WITNESS John Derbyshire AND/or
Defendant Raymond Tonkin because Defendant Tonkin
has been employed with the Pike County District
Attorney Office for over fifteen (15) years and worked
for twenty (20) years as a police officer in Pike
County. The local prejudice is so intense that it
is impossible to find an impartial jury.

As such, Plaintiff entreat the Court to render the
Southern District Court of New York to hear and
determine a judgement in Plaintiff 42 USC 1983
Complaint. Plaintiff feels that the District Courts
of New York have more experience and a knowled-
-gable reputation in Indian Law as oppose to the
District Courts in the Commonwealth of Pennsyl-
-ania. Plaintiff is also domiciled in the Southern
District Court of New York jurisdiction; Please
view Exhibit Q.

"A Factor susceptible to a wide variety of defini-
--itions, for example, the factor of the convenience
of parties and witnesses must also be measured
in terms of the "Interest of Justice." See
American Standard Inc. v. Bendix Corp.; 487, F.
Supp at 264 (W.D. Mo. 1980).

55

"Any party including Plaintiff may move for a transfer under 28 USC ?? 1404(A)." See I-T-E Circuitbreaker Company v. Regan, 348 F. 2d 403 (8th Cir 1965) and American Standard Inc. v. Bendix Corp, 487 F. Supp. 254, 260 (W.D. Mo 1980).

"A party may move for transfer, even if it has waived any objective to venue." See Montgomery Ward & Co. v. Anderson Motor Service Inc, 339 F. Supp. 713, 718 N.3 (W.D. Mo 1971).

"The Court may also transfer an Action, Sua Sponte." See Lead Industries Association, Inc V. Occupational Safety and Health Administration, 610 F. 2d 70, 79 N.17 (2nd Cir 1979)



28 USC )1455 (BAIL)

Plaintiff prays to the Court to remove the six (6)
Tribal Official State prosecution into the District
Court jurisdiction, IN ACCORDANCE to 28 USC )1455:

1. Deputy Chief KEEBA S. Harris ⇒ CP-52-CR-0000690-2019
2. ADAM Abdur-Rahim ⇒ MJ-60304-CR-206-2019
3. MuSA Abdur-Rahim ⇒ MJ-60304-CR-202-2019
4. SuShANE Adams Heylinger ⇒ MJ-60304-CR-203-2019
5. Troy Anthony Sutton ⇒ MJ-60304-CR-207-2019
6. SeKou RashiD-Abdullah ⇒ MJ-60304-CR-205-2019

As such Plaintiff entreat the Court to release
Deputy Chief Keeba Scott Harris detention from
Norristown State Hospital, pending judicial
Proceeding (18 USC 3141) Plaintiff beseech the
Court to Also release the Tribal Law Enforcement
Officers; ADAM Abdur-Rahim, MuSA Abdur-Rahim,
SuShANE Adams Heylinger, Troy Anthony Sutton
AND SeKou RashiD-Abdullah detention from
Pike County Correctional Facility, pending judic-
-ial proceedings (18 USC 3141). Plaintiff request
the following CONDITIONS for bail release from
the Court, pertaining to the Tribal officials:

A. 28 USC 3142(b), Release oN Personal
recognizance;



or

B. 28 USC 3142 (c), Release on Condition;

or
C. 28 USC 3142(g), Release pending collaterial, Plaintiff pledges a 2280 carat Natural Sapphire with a $528,212, Feburary 2014, Apprais-ial value.

Plaintiff request for immediate release upon bail condition(s) is due to the ongoing element of danger, health and safety concerns of the Six (6) Tribal Officials. Plaintiff request is in accordance to 28 USC 1657, for an expediated consideration.

Currently, there is a COVID-19 outbreak in PCCF and NSH; in which has produced several illnesses and deaths, in both facilities. Both Defendants Jessica Keith and Craig Lowe have failed to control the spread of COVID-19 in NSH and PCCF. The Tribal Officials (Deputy Chief Keeba Scott Harris and Tribal Law En-forcement Officers: Adam Abdur-Rahim, Musa Abdur-Rahim, Sushane Adams Heylinger, Troy Anthony Sutton and Sekou Rashid Abdullah) pose a substantial risk of contracting the COVID-19 variant, in which current medicat-

59

—ion is unavailible in the United States.

Tribal Official Deputy Chief Harris especially poses a greater risk to complications, due to her medical history of Asthma and a prior medical history of contracting COVID-19, in the Spring of 2020, in PCCF. All six (6) of the Tribal Officials have <u>No</u> prior criminal history and are pre-trial detainees, as such, the Tribal officials posses greater constitutional rights than prisoners. See <u>Stone</u> v. <u>City of San Francisco</u>, 968 F. 2d 850, 857 N. 10 (9th Cir 1992).

" The rights of pretrial detainees are different from the rights of post conviction detainees", the Court said. Because pretrial detainees are presumed innocent, they are "entitled to more considerate treatment and conditio-ns of confinement than criminals whose conditions of confinement are designed to punish". See <u>Youngberg</u> v. <u>Romeo</u>, 457 US 307, 322 (1982). "While a convicted prisoner is entitled to protection only against "cruel and unusual" punishment under the 8th Amendment, A pretrial detainee, Not yet

found guilty of ANY crime, may Not be subject-
-ED to punishment of AND description" SEE HARDY
V. District of Columbia, 601 F. Supp 2d 182, 188
(D.D.C 2009) 2uoting Hill V. Nicodemus, 979 F.
2d 987, 991 (4th Cir 1992). SEE BANKS V. Booth
2020 US District LEX IS 107762

DuE to the Human Rights AND Constitutional
Violations that the Tribal Officials encounter
ON A daily bases At Norristown State Hospital
AND Pike County Correctional Facility, As such
Plaintiff prays to the Court for release pend-
-ing judicial processings. See Aaron Hope, Et
Al, V. Clear Doll, iN official CApAcity as Warden
York County Prison, Et, Al, 1: 20 CV08562 JEJ
document 11 filed 4-7-20.

61

To reiterate, the S.C.P.R.I.C has <u>NO</u> contract with the Commonwealth of Pennsylvania for civil and/or criminal jurisdiction pertaining to offenses on the Indian Title hamlets of Saw Creek and/or Pine Ridge. Because the Court of jurisdiction pertaining to civil and/or criminal offenses on the Indian Title hamlets of Saw Creek and/or Pine Ridge is the Saw Creek and Pine Ridge Indian Communities Tribal Court.

"The U.S. Supreme Court has stated that as a matter of federal policy and comity matters within the tribe's jurisdiction," presumptive-ly" lie in Tribal Court". See <u>Iowa Mut Ins. Co</u> v. <u>LaPlante</u>, 480 US 9, 18 (1987).

In <u>Teague</u> v. <u>Bad River Band</u> (2000)," Holding that Tribal Courts deserve full, faith and credit, since they are the Court of Independ--ent Sovereign"; Also see <u>Standley</u> v Roberts 59 Fed. 836 (C.C.A 8, 1894).

"In Absence of legislation by Congress, confer--ring jurisdiction upon State Courts, they have <u>NO</u> jurisdiction of crimes committed by Tribal Indians on Indian Country within the bord--ers of State". See <u>Application of Kunaha</u>, 131 F. 2d 737 (7th Cir 1942).



"Absent Compliance with 25 USCS 1322 (A), State Courts CAN EXERCISE NEITHER Civil NOR Criminal Jurisdiction over INDIAN Country, INDIANS." SEE McClanahan V. Arizona State Tax Commission, 411 US 164, 93 S. Ct. 1257, 36 L. Ed. 2D 129 (1973).

IN White Mountain Apache Tribe V. Bracker, 448 US 136, 142 (1980), "THERE is NO rigid rule by which to resolve the question whether A particular State Law may be applied to INDIAN Country or to Tribal members."

IN PENNSylVANIA V. Nelson, 350 US 497 (1956), WAS A U.S. Supreme Court CASE that established A precedent for the preemption of U.S. FEDERAL LAW over State LAW.

IN Cooper V. AArON, 358 US 1 (1958), "The States Are bound by the Decisions of the Supreme Court AND CANNot Chose to ignore them."

"Absent binding precedent, the Court should consider all relevant precedents, including decisions from the Supreme Court, all federal Circuits, federal District Courts and State Courts, in addition, the Court should consider the likelihood that the Supreme Court or the Ninth Circuit would decide the issue in favor of the person Asserting the Right". See Elder v. Holloway, 510 US 510, 512, 516 (1994).

"For guidance as to when prior law clearly establishes a right". See Saucier v. Katz, 533 US At 202 (2001).

The Tribal Officials Accounts and Experiences were relayed to the San Creek and Pine Ridge Indian Communities Tribal Council to be presented to the Court.

The "Supremacy Clause," Article 6, Section 2 of the U.S. Constitution, States that treaties, the Constitution and laws of the United States Supercedes all Laws.



"Once a court determines that "the law was clearly established," the immunity defense ordinarily should fail, since a reasonably "Competent" public official should know the law governing [the official's] conduct". See Harlow v Fitzgerald, 457 US at 518-19 (1982).

Supreme Court
of the
State of New York



ROBERT E. TORRES
ADMINISTRATIVE JUDGE
CRIMINAL DIVISION

CHAMBERS
BRONX COUNTY HALL OF JUSTICE
265 EAST 161ST STREET
BRONX, NEW YORK 10451

October 10, 2018

Tonia Scott
Principal Chief of the Saw Creek and
Pine Ridge Indian Communities
1735 Madison Avenue, #13E
New York, New York 10029

Re: Bronx Criminal Court, Sovereign Immunity Doctrine,
    Criminal Court Judge Michael Hartofillis.
    Automobile Summonses

Dear Ms. Scott,

    We are in receipt of a your fax, dated October 4, 2018, and received by our offices on or about October 9th, 2018.  Ms. Scott, you should be aware that upon receipt of this faxed, detailed letter arising from your encounter with the NYSDEC Officers and the NYPD on or about March 14, 2018, we have forwarded your letter to the Hon. George Grasso, Administrative Judge of the Criminal Court of the City of New York, Bronx County - as this matter was before the Hon. Judge Hartofillis, a criminal court Judge of Bronx County and directly under the supervision of the Hon. Judge Grasso.  Good luck,

                                                    Eider Giovanni Garcia, Esq.,
                                                    Principal Law Clerk to the Hon. Robert E. Torres
                                                    Administrative Judge Supreme Court,
                                                    Criminal Term, Bronx County

Exhibit A



COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

October 9, 2019

Tonia Scott, Principal Chief
Saw Creek & Pine Ridge Indian Communities
1735 Madison Avenue 13E
New York, New York 10029

RE:  Enforcement of Foreign Protection Orders

Dear Ms. Scott:

This correspondence is in response to the communication that was received in our office on September 26, 2019.  After careful review, it does not appear to be a matter in which our agency can become involved.

Thank you for your time and attention in this matter.

Very Respectfully,

John J. Herman
Assistant Counsel
Pennsylvania State Police
1800 Elmerton Avenue
Harrisburg, PA  17110
(717) 783-5568

cc:   PSP File

Exhibit B



Pennsylvania
State Police



COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL

May 6, 2020

Office of Attorney General
Civil Rights Enforcement Section
14th Floor, Strawberry Square
Harrisburg, Pennsylvania 17120
Phone: 717-787-0822
Fax: 717-787-1190

Rosemary Scott
Saw Creek and Pine Ridge Indian Communities Tribal Council
1734 Madison Avenue 13E
New York, NY 10029

Ref:    Pike County Correctional Facility, FILE NO: CRES-20-05-000212

Dear Ms. Scott:

This letter is in response to your complaint to the Pennsylvania Office of Attorney General, Civil Rights Enforcement Section (CRES), on April 23, 2020.  Your complaint alleges prisoner abuse.

Given the nature of your complaint, this is not a matter over which CRES generally has jurisdiction.  However, each state correctional institution has a Security Office that receives and investigates inmates' complaints within that institution.  In addition, the following organizations and agencies, which receive and investigate inmates' complaints, may be able to provide assistance to you.

Pennsylvania Prison Society
230 South Broad Street, Suite 605
Philadelphia, PA 19102
(215) 564-4775
(215) 564-1830 (Fax)
info@prisonsociety.org (e-mail)

Exhibit C

Rosemary Scott, Tonia Scott and Keeba Scott-Harris v. Pike County Correctional Facility
May 6, 2020
Page 2

Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530

Thank you for bringing this matter to our attention.

Very truly yours,

Lisa A. Allen
Civil Investigator
Civil Rights Enforcement Section