## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA

    vs.

TONIA SCOTT,
             Defendant

Case No. MD-0369/2019

## ORDER

**AND NOW**, this *12th* day of February, 2020, upon consideration of the

Defendant's Petition to Dismiss and Void Warrants Due to Defect of Jurisdiction

(Indian/Tribal Authority), filed January 28, 2020,

**IT IS HEREBY ORDERED** that the Defendant's Petition to Dismiss and Void

Warrants Due to Defect in Jurisdiction (Indian/Tribal Authority) is denied.[1]

BY THE COURT:

*[signature]*

Maria L. Dantos, J.

---

[1]  "It is well settled that states have criminal jurisdiction over reservation Indians for crimes committed off the reservation." *Commonwealth v. Monture*, No. 340 WDA, 2014, Pa. Super. WL 10753772 at *3, f.n. 2 (Pa. Super, 2014) (citing *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148-149 (1973)).

    The Defendant's vehicle was stopped in the City of Allentown, near Vultee Street in Lehigh County, Pennsylvania, when she received the citations in question.  The location of her apprehension is more than sixty (60) miles away from the Saw Creek and Pine Ridge Indian Reservation, of which she is a citizen, in Bushkill, Pennsylvania.  Because the Defendant was found to be violating Pennsylvania Motor Vehicle laws in Allentown, Pennsylvania while present in the jurisdiction, the Lehigh County Municipal Courts have jurisdiction over the Defendant for those offenses.

*[handwritten annotations: "NO Judicial SEAL + not clerk of the courts w/a signature of the judge", "NO structural or personal or subject matter", "? NO Judge NO judicial seal from court clerk", "Indian Title Land", "Exhibit D"]*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TONIA SCOTT,

Plaintiff,

-against-

PINE RIDGE COMMUNITY
ASSOCIATION; JOSEPH PERITORE,
President; THERESA ELLIOT,
Vice-President; KAREN SIEGEL, Treasurer,

Defendants.

17-CV-1682 (CM)

TRANSFER ORDER

COLLEEN McMAHON, Chief United States District Judge:

Plaintiff Tonia Scott brings this *pro se* action invoking the Court's diversity jurisdiction, 28

U.S.C. § 1332. Plaintiff, an "Aboriginal/Indigenous/Native American Indian woman," filed this

action against the Pine Ridge Community Association and its president, vice-president, and

treasurer over a real property dispute. Plaintiff resides in New York, and the property and

Defendants are located in Bushkill, Pike County, Pennsylvania. For the following reasons, the

Court transfers this action to the United States District Court for the Middle District of

Pennsylvania.

### DISCUSSION

Under the general venue provision, a civil action may be brought in

(1) a judicial district in which any defendant resides, if all defendants are residents of the
State in which the district is located; (2) a judicial district in which a substantial part of the
events or omissions giving rise to the claim occurred, or a substantial part of property that
is the subject of the action is situated; or (3) if there is no district in which an action may
otherwise be brought as provided in this section, any judicial district in which any
defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For venue purposes, a "natural person" resides in the district where the

person is domiciled, § 1391(c)(1), and a corporation or other entity with the capacity for suit

*Exhibit E*

Welcome to the Pike County Real Property Official Records



**Pennsylvania** Land Records

Home | Setup Registry | Help | Render | About the Registry | Register | Login

🖨 Print Search Results

### Search Results for Pike, PA

🔍 Click the magnifying glass to preview the document (displayed at the bottom of the screen).

Documents From: 01/01/1930
To: 02/16/2017

**Result Matches:** [1 – 6 of 6]

Search Type: Name ▼

Name: SCOTT TONIA

Format is Lastname Firstname
- example: Smith John

As:
Both ▼

Registry Types:
Search all Registry Types
MISCELLANEOUS
POWER OF ATTORNEY
CLEAN&GREEN

Recorded Date:
From
01/01/1930
To
02/16/2017

Search   25 ▼ Results Per Page

| Name | Series | Type | File Date | Number | Volume | Page | Inst Date | # of Pages |
|------|--------|------|-----------|--------|--------|------|-----------|------------|
| 🔍 SCOTT TONIA | Grantee | DEED | 1/20/2012 | 00000607 | 002379 | 2322 | 12/21/2011 | 4 |
| 🔍 SCOTT TONIA | Grantor | DEED | 6/10/2016 | 00004511 | 002497 | 0055 | 5/11/2016 | 3 |
| 🔍 SCOTT TONIA | Grantor | AFFIDAVIT | 10/11/2016 | 00008297 | 002506 | 1601 | 10/1/2016 | 4 |
| 🔍 SCOTT TONIA | Grantor | AFFIDAVIT | 10/11/2016 | 00008297 | 002506 | 1601 | 10/1/2016 | 4 |
| 🔍 SCOTT TONIA | Grantor | AFFIDAVIT | 2/1/2017 | 00001002 | 002516 | 0526 | 10/1/2016 | 4 |
| 🔍 SCOTT TONIA | Grantee | AFFIDAVIT | 2/1/2017 | 00001002 | 002516 | 0526 | 10/1/2016 | 4 |

**Detail Results Preview:**

| Number | | File Date | | Inst. Date |
|--------|---|-----------|---|-----------|
| 201700001002 | | 2/1/2017 10:49:00AM | | 10/1/2016 |

| Type | | Liber | Page | # of Pages |
|------|---|-------|------|------------|
| (AFFIDAVIT ) | | 002516 | 0526 | 4 |

| | Series | | Name |
|---|--------|---|------|
| Grantor | | | SCOTT TONIA |
| Grantee | | | SCOTT TONIA |

Real Property Official Records Search

© 2017 Conduent Business Services, LLC. All rights reserved.

*Exhibit F*

Instrument
201700001002 OR     Book Page
                    2516  526

## DECLARATION OF OWNERSHIP AFFIDAVIT

I, Tonia' Scott, being first duly subscribed and sworn under oath, state that I am the owner of real property commonly known as **Pine Ridge, Bushkill, Pennsylvania**, which said property is located in the unincorporated census-designated place of **Lehman Township, Bushkill, Pennsylvania**, more particularly described as:

| Map Coordinates: | Latitude: 41.150833 | Longitude: -74.99 |
| --- | --- | --- |
| | 41.1402 | -74.986 |
| | 41.13135 | -75.00129 |
| | 41.1466332431681 | -74.99482575447934 |
| | 41.15669 | -74.99067 |
| | 41.1309° N | 74.9916° W |

My ownership of this property is evidenced from inheritance and in accordance to **Aboriginal title** and **original Indian title.**   Legal precedence illustrates the following:

1. As an Indigenous American Indian woman, I have Aboriginal title to my ancestral land of North America/ Turtle Island.

2. **Aboriginal title** is a common law doctrine that the land rights of indigenous peoples to customary tenure persist after the assumption of sovereignty under settler colonialism. All jurisdictions are in agreement that aboriginal title is inalienable, except to the national government, and that it may be held either individually or collectively. Aboriginal title is also referred to as **indigenous title, native title and original Indian title**

   a. "Non- Indian bodies have no authority to title land, only to pay

Instrument
201700001002 OR

Book Page
2516   527

Compensation". _**United States v. Alcea Band of Tillamooks**_

b. Consider, also, these words of Justice Mansfield in _Oneida_:
"This right of occupancy which the Indians retain until validly extinguished has been variously termed aboriginal title, unrecognized title, original Indian title, or simply _Indian title_."

c. **Worcester v. Georgia**, 31 U.S. 515 (1832), the Supreme Court called Indian nations "the undisputed possessors of the soil, from time immemorial". It also held that the Indians "were admitted to be the rightful occupants of the soil, with a legal as well as just claim to retain possession of it, and to use it according to their own- discretion"

d. **United States v. Cook**, 86 U.S. 591 (1874), the court held: "This right of use' and occupancy by the Indians is unlimited. They may exercise it at their discretion". Id. at 593.

e. **United States v. Cook**, supra, (2) "Indians are the equivalent of life tenants on their lands"

f. In **Johnson v. McIntosh**, "The Court guarantee the. occupants protection from intrusion." Id. at 1371-72

g. **Edwardsen v. Morton, 369 F. Supp. 1359 CD. D.C. (1973), United States v. Klamath and Moadoc Tribes**, supra, which took a similarly expansive view of Indian title right of occupancy as it existed prior to any treaty.

h. In **Minnesota v Hitchcock,** 185 U.S. 373 (1902)," the court acknowledged that confessedly the fee of the land was in the United States (North America), subject to a right of occupancy by the

Instrument
201700001002 OR    Book  Page
2516  528

Indians". Id. at 388-89.

i.   <u>Cramer v. United States</u> (1923) was the first Supreme Court decision to acknowledge the doctrine of individual aboriginal title, not held in common by tribes.

3.  The United States of America is a charter member of the United Nations. A United Nations resolution (UN resolution) is a formal text adopted by a United Nations (UN) body. The <u>United Nations Declaration on the Rights of Indigenous People,</u> signed by United States President Barak Obama is a legally binding United Nations General Assembly Resolution, General Assembly Resolutions have the same weight as full-fledged sources of international law:

   a.  "In this Declaration Indigenous Peoples are those who Embody historical continuity with societies which existed prior to the conquest  and settlement of their territories by Europeans..."

   b.  Indigenous peoples **HAVE THE RIGHT TO THE LANDS**, territories and RESOURCES which they have traditionally owned, occupied or otherwise USED OR ACQUIRED- Article 26 (1)

   c.  Indigenous peoples **HAVE THE RIGHT TO OWN**, USE, develop and control the LANDS, territories and RESOURCES that they possess by reason of traditional ownership or other traditional occupation or use. AS WELL AS THOSE WHICH THEY HAVE OTHERWISE ACQUIRED. –Article 26 (2)

Instrument
201700001002 OR    Book  Page
                   2516  529

Dated this ___01___ day of ____OCT____, 20_16_.

_Trina Scott_
Owner's Signature

201700001002
Filed for Record in
PIKE COUNTY, PA
SHARON SCHROEDER
02-01-2017 At 10:49 am.
AFFIDAVIT          54.00
OR Book   2516 Page 526 - 529

## NOTARY ACKNOWLEGEMENT

EXECUTED this day ___01___ of ____OCTOBER____, 2016.

STATE OF _NEW YORK_

COUNTY OF _NEW YORK_

On this day, personally appeared before me, ___TRINA SCOTT___, to me
known to be the person(s) described in and who executed the within instrument,
and acknowledged that he/she signed the same as his/her voluntary act and deed,
for the uses and purposes therein mentioned.

Witness my hand and official seal hereto affixed on this day of ___OCT 01___
2016.

Notary's Public Signature: _____

My commission expires _09 16 2018_

HENRY CALDERON
Notary Public, State of New York
No. 01CA6043709
Qualified in New York County
Commission Expires _09-10-2018_

2/20/2017                    Welcome to the Pike County Real Property Official Records



**Pennsylvania** Land Records

🖨 Print Search Results          ## Search Results for Pike, PA

                                🔍 Click the magnifying glass to preview the document (displayed at the bottom of the screen).

Documents From: 01/01/1930                                                    **Result Matches: [1 - 6 of 6]**
To: 02/16/2017

| | Name | Series | Type | File Date | Number | Volume | Page | Inst Date | # of Pages |
|---|---|---|---|---|---|---|---|---|---|
| 🔍 | SCOTT TONIA | Grantee | DEED | 1/20/2012 | 00000607 | 002379 | 2322 | 12/21/2011 | 4 |
| 🔍 | SCOTT TONIA | Grantor | DEED | 6/10/2016 | 00004511 | 002497 | 0055 | 5/11/2016 | 3 |
| 🔍 | SCOTT TONIA | Grantor | AFFIDAVIT | 10/11/2016 | 00008297 | 002506 | 1601 | 10/1/2016 | 4 |
| 🔍 | **SCOTT TONIA** | **Grantee** | **AFFIDAVIT** | **10/11/2016** | **00008297** | **002506** | **1601** | **10/1/2016** | **4** |
| 🔍 | SCOTT TONIA | Grantor | AFFIDAVIT | 2/1/2017 | 00001002 | 002516 | 0526 | 10/1/2016 | 4 |
| 🔍 | SCOTT TONIA | Grantee | AFFIDAVIT | 2/1/2017 | 00001002 | 002516 | 0526 | 10/1/2016 | 4 |

Search Type:  Name  ▼

Name:  SCOTT TONIA

Format is **Lastname Firstname**
- example: **Smith John**

As:
 Both  ▼

Registry Types:
Search all Registry Types
MISCELLANEOUS
POWER OF ATTORNEY
CLEAN&GREEN

Recorded Date:
From
01/01/1930  📅
To
02/16/2017  📅
 Search   25 ▼ Results Per Page

**Detail Results Preview:**

| Number | File Date | Inst. Date |
|---|---|---|
| 201600008297 | 10/11/2016 11:36:00AM | 10/1/2016 |

| Type | Liber | Page | # of Pages |
|---|---|---|---|
| (AFFIDAVIT ) | 002506 | 1601 | 4 |

| Series | Name |
|---|---|
| Grantor | SCOTT TONIA |
| Grantee | SCOTT TONIA |

© 2017 Conduent Business Services, LLC. All rights reserved.

*Exhibit G*

Instrument
201600008297 OR

Book Page
2506 1601

## DECLARATION OF OWNERSHIP AFFIDAVIT

I, Tonia' Scott, being first duly subscribed and sworn under oath, state that I am

the owner of real properties commonly known as  Saw Creek, Bushkill, Lehman Twp.

Pennsylvania 18324 which said properties are located in Pike County, Pennsylvania,

more particularly described as large parcels of land and natural resources.

Map Coordinates:

| Latitude: | Longitude: |
|---|---|
| N41.11871° | W75.05156° |
| N41.119475° | W75.046271° |
| N41.12093° | W75.04462° |
| N41.12092° | W75.05164° |
| N41.11871° | W75.05156° |
| N41.11259° | W75.05073° |
| N41.1034364° | W75.0426968° |
| N41.0890° | W75.0388° |

My ownership of these properties are evidenced from inheritance and in accordance

to **Aboriginal title** and **original Indian title.**   Legal precedence illustrates the

following:

1. As an Indigenous American Indian woman, I, Tonia' Scott have Aboriginal

   title to my ancestral land of North America/ Turtle Island.

2. **Aboriginal title** is a common law doctrine that the land rights of indigenous

   peoples to customary tenure persist after the assumption of

   sovereignty under settler colonialism. All jurisdictions are in agreement that

   aboriginal title is inalienable, except to the national government, and that it

   may be held either individually or collectively. Aboriginal title is also referred

   to as **indigenous title, native title and original Indian title**

Exhibit E

Instrument        Book Page
201600008297 OR · 2506 1602

a.  "Non- Indian bodies have no authority to title land, only to pay

Compensation"*. **United States v. Alcea Band of Tillamooks**

b.  Consider, also, these words of Justice Mansfield in *Oneida*:

"This right of occupancy which the Indians retain until validly

extinguished has  been variously termed aboriginal title, unrecognized

title, original Indian title, or simply *Indian title*."

c.  **Worcester v. Georgia**, 31 u.s. 515 (1832), the Supreme Court

called Indian nations "the undisputed possessors of the soil, from time

immemorial". It also held that the Indians "were admitted to be the

rightful  occupants of the soil, with a legal as well as just claim to

retain possession of it, and to use it according to their own- discretion"

d.  **United States v. Cook**, 86 U.S. 591 (1874), the court held: This

right of  use' and occupancy by the Indians is unlimited. They may

exercise it at their discretion. If the lands in a state of nature are not

in a condition for purposes of agriculture, they may be cleared of their

timber to such an extent as may be reasonable under the

circumstances." Id. at 593.

e.  **United States v. Cook**, supra, (2) "Indians are the equivalent of life

tenants on their lands"

f.  In **Johnson v. McIntosh**, "The Court guarantee the. occupants

protection from intrusion." Id. at 1371-72

3. The United States of America is a charter member of the United Nations and one of five permanent members of the UN Security Council. A United Nations resolution (UN resolution) is a formal text adopted by a United Nations (UN) body.  The **United Nations Declaration on the Rights of Indigenous People,** signed by United States President Barak Obama is a legally binding United Nations General Assembly Resolution, General Assembly Resolutions have the same weight as full-fledged sources of International law:

   a.  *"In this Declaration Indigenous Peoples are those who Embody historical continuity with societies which existed prior to the conquest  and settlement of their territories by Europeans..."*

   b.  *Indigenous peoples* ***HAVE THE RIGHT TO THE LANDS,*** *territories and RESOURCES which they have traditionally owned, occupied or otherwise USED OR ACQUIRED- Article 26 (1)*

   c.  *Indigenous peoples* ***HAVE THE RIGHT TO OWN,*** *USE, develop and control the LANDS, territories and RESOURCES that they possess by reason of traditional ownership or other traditional occupation or use. AS WELL AS THOSE WHICH THEY HAVE OTHERWIS ACQUIRED. ~Article 26 (2)*

Instrument          Book Page
201600008297 OR     2506 1604

Dated this _01_ day of ____OCT____, 20_16_.

_[signature]_

Owner's Signature

.201600008297
Filed for Record in
PIKE COUNTY, PA
SHARON SCHROEDER
10-11-2016 At 11:36 am.
AFFIDAVIT       54.00
OR Book   2506 Page 1601 - 1604

## NOTARY ACKNOWLEGEMENT

EXECUTED this day _01_ of _OCTOBER_, 2016.

STATE OF ___New York___

COUNTY OF ___New York___

On this day, personally appeared before me, __TONIA SCOTT__, to me known to be the person(s) described in and who executed the within instrument, and acknowledged that he/she signed the same as his/her voluntary act and deed, for the uses and purposes therein mentioned.

Witness my hand and official seal hereto affixed on this day of __OCT 01__ 20_16_.

Notary's Public Signature: _[signature]_

My commission expires __09-10,2018__

HENRY CALDERON
Notary Public, State of New York
No. 01CA6043709
Qualified in New York County
Commission Expires 09-10-2018

# Decree of the Saw Creek and Pine Ridge Indian Communities

### A DECREE TO ESTABILISH REQUIREMENTS FOR THE SAW CREEK AND PINE RIDGE INDIAN COMMUNITIES' JURISDICTION.

### DECREE NO. 001

I. **WHEREAS,** all Aboriginal/ Indian Title Land Patents (past, present and future) titled by Principal Chief Tonia' Scott shall be under the jurisdiction of the Saw Creek and Pine Ridge Indian Communities including tribal court, tribal law enforcement and tribal agencies.

II. **WHEREAS,** "What can be restated here based on earlier findings is that Aboriginal Title is a "*quiet and uncontrolled*" possession *sui generis*", *See* Cherokee Nation v. Georgia, *30 U.S. 15 (1831).*

III. **WHEREAS,** Aboriginal title creates a legally enforceable property right against anyone but Congress. *See* Beecher v. Wetherby, 95 U.S. 517 at 525 (1877).

IV. **WHEREAS,** in the Constitution of the Saw Creek and Pine Ridge Indian Communities, Article VII. Executive,

> Section 1. The executive power shall be vested in a Principal Chief, who shall be styled "The Principal Chief of the Saw Creek and Pine Ridge Indian Communities ". The Principal Chief shall be the original land patent owner or a direct bloodline matriarchal descendant of the original land patent owner (heredity).

V. **WHEREAS,** The Saw Creek and Pine Ridge Indian Communities is a Native American/ Indian tribe, with several county recorded Indian/ Aboriginal Title, land patents located in multiple states. "It owes from the acknowledgment at federal common law that Indian tribes are "distinct, independent political communities, retaining their original natural rights ..." Santa Clara Pueblo v. Martinez, supra, 436 U.S. at 55. "The powers of Indian tribes are, in general, 'inherent powers of a limited sovereignty which has never been extinguished." F. Cohen, Handbook of Federal Indian Law 122 (1945)" (Emphasis in original). United States v. Wheeler, 435 U.S. 313, 322 (1978). It is the long history, which predates the founding of this country, of tribes "as self-governing sovereign political communities" which establishes their claim of sovereignty. Id., at 323. See also Cherokee Nation v. Babbitt, 117 F.3d 1489 (D.C. Cir., 1997) ("Tribal sovereign immunity does not derive from an act of Congress, but rather is one of

*Exhibit #(1)*

the inherent powers of a limited sovereignty which has never been extinguished.")

VI. **WHEREAS,** all Aboriginal / Indian Title lands recorded by Principal Chief Tonia' Scott (past, present and future) shall **NEVER** be in **TRUSTED** by a government and/or corporation and/or company and/or organization and/or individual (s).   All Aboriginal / Indian Title lands recorded by Principal Chief Tonia' Scott (past, present and future) shall be governed and maintained by direct bloodline tribal members.

VII.      **WHEREAS,** NO PRINCIPAL CHIEF SHALL BE A FIGURE HEAD, ONE MUST CONFORM TO THE DUTIES AS DIRECTED IN THE SAW CREEK AND PINE RIDGE INDIAN COMMUNITIES' CONSTITUTION AND DECREES.

VIII.      **WHEREAS,** membership into the tribe is by direct bloodline to the Aboriginal / Indian Title holder, Principal Chief Tonia' Scott and/or kinship to the Aboriginal / Indian Title holder, Principal Chief Tonia' Scott; as well as the requirements in the Constitution of the Saw Creek and Pine Ridge Indian Communities, Article IV. Citizenship, Section 1. All citizens of the Saw Creek and Pine Ridge Indian Communities must be original enrollees or descendants of original enrollees listed on the Saw Creek and Pine Ridge Indian Communities Rolls. Enrollment requirements are in conjunction with a minimum of 50% (½) blood quantum of direct American Indian descent.

IX. **WHEREAS,** the court of jurisdiction for the Saw Creek and Pine Ridge Indian Communities shall be the Saw Creek and Pine Ridge Indian Communities Tribal Court. As stated in the **COURT RULES OF THE SAW CREEK AND PINE RIDGE INDIAN COMMUNITIES TRIBAL COURT HANDBOOK,** Section V., Jurisdiction (1), The Tribal Court shall have original jurisdiction extending to all cases, matters or controversies arising under and as may be limited by the laws, ordinances, regulations, customs and judicial decisions of the Saw Creek and Pine Ridge Indian Communities. In alliance with, *Williams v. Lee,* 358 U.S. 217, 220 (1959), Tribes possess the inherent authority "to make their own laws and to be ruled by them." And "within the boundaries of Indian lands, tribes can regulate like any other government". *Atkinson Trading Post v. Shirley,* 532 U.S. 645 (2001).

X. **WHEREAS,** there shall NEVER be a contract in waiving our tribal inherent sovereign immunity for litigation and/ or arbitration within and with States and/or counties and/ or municipalities and/or any form of local governments, pertaining

XI. **WHEREAS**, in McClanahan v Arizona State Tax Commission, 411 U.S. 164 (1973), The trend has been away from the idea of inherent Indian sovereignty as a bar to state jurisdiction and towards reliance on federal pre-emption... the modern cases thus tend to avoid reliance on platonic notion of Indian sovereignty and to look instead to the applicable treaties and statutes which define the limits of state power..." "From the very first days of our government, the federal government had been permitting the Indians largely to govern themselves, free from state interference ", ID., at 686-687, 6

XII.     **WHEREAS**, and the Supreme Court has stated that as a matter of federal policy and comity, matters within the tribe's jurisdiction "presumptively" lie in tribal court. Iowa Mut. Ins. Co. v. LaPlante, 480 US 9, 18 (1987); As a result, even where federal court jurisdiction exists over a case involving tribal court jurisdiction, "a federal court should stay its hand until after the tribal court has had a full opportunity to determine its own jurisdiction." Strate v. A-1 Contractors, 520 U.S. 438 (1997).

XIII.     **WHEREAS**, in Teague v. Bad River Band, (2000) holding that tribal courts deserve full faith and credit since they are the court of an independent sovereign. As confirmed in the CIVIL RIGHTS ACT OF 1968 [Public Law 90–284, 82 Stat. 73] and the 25 U.S.C. Title 25 – INDIANS CHAPTER 15 – CONSTITUTIONAL RIGHTS OF INDIANS §1322. (C) Force and effect of tribal ordinances or customs, Any tribal ordinance or custom heretofore or hereafter adopted by an Indian tribe, band, or community in the exercise of any authority which it may possess shall, if not inconsistent with any applicable civil law of the State, be given full force and effect in the determination of civil causes of action pursuant to this section. (Pub. L. 90–284, title IV, §402, Apr. 11, 1968, 82 Stat. 79.)

XIV.     **WHEREAS**, in 1997, in Idaho v. Coeur d'Alene Tribe, No. 94-1474, the Supreme Court held that "Indian tribes ...should be accorded the same status as foreign sovereigns, against whom States enjoy Eleventh Amendment immunity."

XV.     **WHEREAS**, Tribes have been exercising political and cultural sovereignty since long before the establishment of the United States, and their sovereignty is based not on any federal authority, but on principles of

international law. See supra, COHEN'S HANDBOOK OF FEDERAL INDIAN LAW, "What Is Federal Indian Law," at 1.

XVI.    WHEREAS, the United States of America is a charter member of the United Nations. A United Nations resolution (UN resolution) is a formal text adopted by a United Nations (UN) body. The <u>United Nations Declaration on the Rights of Indigenous People,</u> signed by United States President Barak Obama is a legally binding United Nations General Assembly Resolution, General Assembly Resolutions have the same weight as full-fledged sources of international law:

   a.    *Indigenous peoples HAVE THE RIGHT TO THE LANDS, territories and RESOURCES which they have traditionally owned, occupied or otherwise USED OR ACQUIRED - Article 26 (1)*

   b.    *Indigenous peoples HAVE THE RIGHT TO OWN, USE, develop and control the LANDS, territories and RESOURCES that they possess by reason of traditional ownership or other traditional occupation or use. AS WELL AS THOSE WHICH THEY HAVE OTHERWISE ACQUIRED. –Article 26 (2)*

XVII.    WHEREAS, in *The Paquete Habana*, 175 U.S. 677 (1900) Federal courts may look to customary international law because it is an integrated part of American law.

XVIII.    WHEREAS, in *Cooper v. Aaron*, 358 U.S. 1 (1958) The states are bound by the decisions of the Supreme Court and cannot choose to ignore them.

XIX.    WHEREAS, in *Ableman v. Booth*, 62 U.S. 506 (1859) State courts cannot issue rulings that contradict the decisions of federal courts.

XX.    WHEREAS, State courts, like federal courts, have a "<u>constitutional obligation</u>" to safeguard personal liberties and to uphold federal law. <u>Stone v. Powell</u> 428 US 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067.

XXI.    WHEREAS, the obligation of state courts to give full effect to federal law is the same as that of federal courts. <u>New York v. Eno.</u> 155 US 89, 15 S. Ct. 30, 39 L. Ed. 80.

XXII.    WHEREAS, in *Pennsylvania v. Nelson*, 350 U.S. 497 (1956), was
a United States Supreme Court case that established a precedent for
the preemption of United States Federal law over State laws.

XXIII.    WHEREAS, ALL DECREES are irrevocable, unless instructed in that
particular decree.

XXIV.    WHEREAS, in *Worcester v. Georgia*, 31 U.S. 515 (1832), the Supreme
Court called Indian nations "the undisputed possessors of the soil, from time
immemorial". It also held that the, *"Indians were admitted to be the rightful
occupants of the soil, with a legal as well as just claim to retain possession of it
and to use it according to their own- discretion"*.

BE IT RESOLVED THAT, the Saw Creek and Pine Ridge Indian Communities' requirements
shall be enacted.

### Certification

I, Principal Chief and Indian/ Aboriginal Title Owner Tonia' Scott of the Saw Creek and Pine
Ridge Indian Communities, do hereby certify that Decree # 001 is true and exact as approved by
the Tribal Council in a special meeting called on February 10, 2018.

Principal Chief and Indian/ Aboriginal Title
Owner Tonia' Scott of the Saw Creek and Pine
Ridge Indian Communities

ATTEST:

Rosemary Scott, Recording Secretary and
Court Clerk of the Saw Creek and Pine Ridge
Indian Communities

# Decree of the Saw Creek and Pine Ridge Indian Communities

A DECREE TO CONVEY PRINCIPAL CHIEF TONIA' SCOTT'S ABORIGINAL/
INDIAN TITLE- LAND PATENTS AND CONTRACTUAL PROPERTIES INTO THE
SAW CREEK AND PINE RIDGE INDIAN COMMUNITIES' JURISDICTION.

DECREE NO. 011

I.   WHEREAS, all Aboriginal/ Indian Title Land Patents (past, present and future)
titled by Principal Chief Tonia' Scott shall be under the jurisdiction of the Saw
Creek and Pine Ridge Indian Communities including tribal court, tribal law
enforcement and tribal agencies.

II.  WHEREAS, "What can be restated here based on earlier findings is that
Aboriginal Title is a "*quiet and uncontrolled*" possession *sui generis*", *See*
*Cherokee Nation v. Georgia, 30 U.S. 15 (1831)*.

III. WHEREAS, in the **Constitution of the Saw Creek and Pine Ridge Indian
Communities, Article VII. Executive,**

     **Section 1.** The executive power shall be vested in a Principal Chief, who
shall be styled "The Principal Chief of the Saw Creek and Pine Ridge
Indian Communities ". The Principal Chief shall be the original land
patent owner or a direct bloodline matriarchal descendant of the original
land patent owner (heredity).

IV.  WHEREAS, The Saw Creek and Pine Ridge Indian Communities is a Native
American/ Indian tribe, with a county recorded Indian/ Aboriginal Title, land
patent located in the state of Pennsylvania, "It owes from the acknowledgment at
federal common law that Indian tribes are "distinct, independent political
communities, retaining their original natural rights ..." **Santa Clara Pueblo v.
Martinez**, supra, **436 U.S. at 55**. "The powers of Indian tribes are, in general,
'inherent powers of a limited sovereignty which has never been extinguished." F.
**Cohen, Handbook of Federal Indian Law 122 (1945)"** (Emphasis in original).
**United States v. Wheeler, 435 U.S. 313, 322 (1978)**. It is the long history, which
predates the founding of this country, of tribes "as self-governing sovereign
political communities" which establishes their claim of sovereignty. **Id., at 323.**
See also **Cherokee Nation v. Babbitt, 117 F.3d 1489 (D.C. Cir., 1997)** ("Tribal
sovereign immunity does not derive from an act of Congress, but rather is one of
the inherent powers of a limited sovereignty which has never been extinguished.")

V.   WHEREAS, the court of jurisdiction for the Saw Creek and Pine Ridge Indian

*Exhibit I*

Communities shall be the Saw Creek and Pine Ridge Indian Communities Tribal
Court. As stated in the COURT RULES OF THE SAW CREEK AND PINE
RIDGE INDIAN COMMUNITIES TRIBAL COURT HANDBOOK, Section
V., Jurisdiction (1), The Tribal Court shall have original jurisdiction extending to
all cases, matters or controversies arising under and as may be limited by the
laws, ordinances, regulations, customs and judicial decisions of the Saw Creek
and Pine Ridge Indian Communities. In alliance with, *Williams v. Lee*, 358 U.S.
217, 220 (1959), Tribes possess the inherent authority "to make their own laws
and to be ruled by them." And "within the boundaries of Indian lands, tribes can
regulate like any other government". *Atkinson Trading Post v. Shirley*, 532 U.S.
645 (2001).

VI. **WHEREAS.** Monetary proceeds from the Aboriginal/ Indian Title Land Patents
(past, present and future) titled by Principal Chief Tonia' Scott shall be allocated
towards the Saw Creek and Pine Ridge Indian Communities tribal government's
fiscal budget.

VII.    **WHEREAS**, "The Indian title, such as it was before the treaty …
consisted of the *usufruct* and right of occupancy and "enjoyment; and," so-long
as it continued, was superior to and excluded those claiming the reserved lands by
patents made subsequent to the ratification of the treaty; they could not disturb the
occupants under the Indian title. *That an action for ejectment could be
maintained on an Indian right to occupancy and use, is not open to question."*
Citing *Johnson v. McIntosh* (1823), supra. Id, at 232.

VIII.    **WHEREAS**, the Supreme Court has relied on the right to exclude others
as the basis for recognition of constitutional property interests in land. See
*College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*,
527 U.S. 666, 673 (1999) ("[t]he hallmark of a protected property interest [in the
constitutional sense] is the right to exclude others."). It has long been the law that
Indians holding land under aboriginal title may maintain an ejectment action
against trespassers. *Marsh v. Brooks*, 49 U.S. 223, 232 (1850) (the right of
ejectment "is not open to question"); See also, *Oneida Indian Nation v. County
of Oneida*, 470 U.S. 226 (1985) (Indians may maintain trespass actions for
violations of their land rights).

IX. **WHEREAS**, in the Constitution of the Saw Creek and Pine Ridge Indian
Communities, Article X. Fiscal,

    A. **Section 1.** The fiscal year shall commence on the first day of October in
    each year, unless otherwise provided by law.

B.  Section 2. The Saw Creek and Pine Ridge Indian Communities Tribal Council shall provide by law for annual expenditure of funds, and the source from which funds are to be derived, to defray the estimated expenses of the Executive, Legislative, and Judicial branches and the departments of government of the Saw Creek and Pine Ridge Indian Communities for each fiscal year. The budget shall not exceed estimated revenues.

X.  WHEREAS, in Worcester v. Georgia, 31 U.S. 515 (1832), the Supreme Court called Indian nations "the undisputed possessors of the soil, from time immemorial". It also held that the, "*Indians were admitted to be the rightful occupants of the soil, with a legal as well as just claim to retain possession of it and to use it according to their own- discretion*".

BE IT RESOLVED THAT, all Aboriginal/ Indian Title Land Patents (past, present and future) titled by Principal Chief Tonia' Scott shall be under the jurisdiction of the Saw Creek and Pine Ridge Indian Communities including branches such as the tribal court, tribal law enforcement and tribal agencies.

## Certification

I, Principal Chief and Indian/ Aboriginal Title Owner Tonia' Scott of the Saw Creek and Pine Ridge Indian Communities, do hereby certify that Decree # 011 is true and exact as approved by the Tribal Council in a special meeting called on February 01, 2019.

Principal Chief and Indian/ Aboriginal Title
Owner Tonia' Scott of the Saw Creek and Pine
Ridge Indian Communities

ATTEST:

Rosemary Scott, Recording Secretary and
Court Clerk of the Saw Creek and Pine Ridge
Indian Communities

*AND/OR COUNTIES AND/OR MUNICIPALITIES (political subdivisions)*

**Cross References**

This subchapter is referred to in  25 USCS § 1755

§ 1321.    *CHP 15*    Assumption by State of criminal jurisdiction

**(a) Consent of United States.**

(1) In general. The consent of the United States is hereby given to any State not having jurisdiction over criminal offenses committed by or against Indians in the areas of Indian country situated within such State to assume, with the consent of the Indian tribe occupying the particular Indian country or part thereof which could be affected by such assumption, such measure of jurisdiction over any or all of such offenses committed within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over any such offense committed elsewhere within the State, and the criminal laws of such State shall have the same force and effect within such Indian country or part thereof as they have elsewhere within that State.

(2) Concurrent jurisdiction. At the request of an Indian tribe, and after consultation with and consent by the Attorney General, the United States shall accept concurrent jurisdiction to prosecute violations of sections 1152 and 1153 of title 18, United States Code, within the Indian country of the Indian tribe.

**(b) Alienation, encumbrance, taxation, and use of property; hunting, trapping, or fishing.** Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; or shall deprive any Indian or any Indian tribe, band, or community of any right, privilege, or immunity afforded under Federal treaty, agreement, or statute with respect to hunting, trapping, or fishing or the control, licensing, or regulation thereof.

(April 11, 1968, P. L. 90-284, Title IV, § 401, 82 Stat. 78; July 29, 2010, P. L. 111-211, Title II, Subtitle B, § 221(a), 124 Stat. 2271 .)

*Also in Civil Rights act of 1968, Title IV - Indians   Section 401(A)*

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*Exhibit I*

In Absence of legislation by Congress, conferring Jurisdiction upon State Courts, they have No Jurisdiction of Crimes committed by Tribal Indians on Indian Lands within borders of State. _Application of Konaha_, 131 F 2d 737 (7th Cir 1942)

**41 Am Jur 2d, Indians; Native Americans 133, 135, 148, 149.**

### Law Review Articles:

Goldberg; Champagne. Symposium: Indian Law at a Crossroads: Is Public Law 280 Fit for the Twenty-First Century? Some Data at Last. 38 Conn L Rev 697, May 2006.

Leonhard. Returning Washington P.L. 280 Jurisdiction to Its Original Consent-Based Grounds. 47 Gonz L Rev 663, 2011/2012.

### Annotations:

Construction and Application of 2 of Federal Public Law 280, Codified At 18 U.S.C.A. 1162 [18 USCS 1162], Under Which Congress Expressly Granted Several States Criminal Jurisdiction Over Matters Involving Indians. 55 ALR Fed 2d 35.

### Other Treatises:

Cohens Handbook of Federal Indian Law (Matthew Bender), ch 1, History and Background of Federal Indian Policy 1.07.

Cohens Handbook of Federal Indian Law (Matthew Bender), ch 6, Tribal/State Relationship 6.04.

## 1324. Amendment of State constitutions or statutes to remove legal impediment; effective date

Notwithstanding the provisions of any enabling Act for the admission of a State, the consent of the United States is hereby given to the people of any State to amend, where necessary, their State constitution or existing statutes, as the case may be, to remove any legal impediment to the assumption of civil or criminal jurisdiction in accordance with the provisions of this title [25 USCS 1321 et seq.]. The provisions of this title [25 USCS 1321 et seq.] shall not become effective with respect to such assumption of jurisdiction by any such State until the people thereof have appropriately amended their State constitution or statutes, as the case may be.

**HISTORY:**
Act April 11, 1968, P. L. 90-284, Title IV, 404, 82 Stat. 79.

### Research References and Practice Aids

### Law Review Articles:

Goldberg; Champagne. Symposium: Indian Law at a Crossroads: Is Public Law 280 Fit for the Twenty-First Century? Some Data at Last. 38 Conn L Rev 697, May 2006.

_White Mountain Apache Tribe v Bracker_, 448 US 136, 142 (1980) "There is No rigid rule by which to resolve the question whether a particular State law may be Applied to Indian Lands or

[25 FR 3124, Apr. 12, 1960, as amended at 40 FR 20625, May 12, 1975; 48 FR 13414, Mar. 31, 1983]

5 U.S.C. 301; R.S. 463, 25 U.S.C. 2.

## § 1.4 State and local regulation of the use of Indian property.

(a) Except as provided in paragraph (b) of this section, none of the laws, ordinances, codes, resolutions, rules or other regulations of any State or political subdivision thereof limiting, zoning or otherwise governing, regulating, or controlling the use or development of any real or personal property, including water rights, shall be applicable to any such property leased from or held or used under agreement with and belonging to any Indian or Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States.

(b) The Secretary of the Interior or his authorized representative may in specific cases or in specific geographic areas adopt or make applicable to Indian lands all or any part of such laws, ordinances, codes, resolutions, rules or other regulations referred to in paragraph (a) of this section as he shall determine to be in the best interest of the Indian owner or owners in achieving the highest and best use of such property. In determining whether, or to what extent, such laws, ordinances, codes, resolutions, rules or other regulations shall be adopted or made applicable, the Secretary or his authorized representative may consult with the Indian owner or owners and may consider the use of, and restrictions or limitations on the use of, other property in the vicinity, and such other factors as he shall deem appropriate.

[30 FR 7520, June 9, 1965]

5 U.S.C. 301; R.S. 463, 25 U.S.C. 2.

## § 1.10 Availability of forms.

CFR                                                    5

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



Exhibit



UNITED STATES
DEPARTMENT OF THE INTERIOR
OFFICE OF THE SOLICITOR
WASHINGTON, D.C.  20240

28 1976 SEP

Memorandum

To:        Lawrence A. Aschenbrenner, Assistant Solicitor
           Division of Indian Affairs

From:      Tim Vollmann, Attorney
           Division of Indian Affairs

Subject:   The Nature of Aboriginal Indian Title

In essence, the claim of the Passamaquoddy Indian Tribe is
one for aboriginal Indian title.  The subject most recently
received treatment by the Supreme Court in Oneida Indian
Nation v. County of Oneida, 414 U.S. 661 (1974).  There the
court stated:

> "It very early became accepted doctrine
> in this Court that although fee title
> to the lands occupied by Indians when
> the colonists arrived became vested
> in the sovereign--first the dis-
> covering European nation and later
> the original States and the United
> States--a right of occupancy in the
> Indian tribes was nevertheless
> recognized.  That right, sometimes
> called Indian title and good against
> all but the sovereign, could be
> terminated only by sovereign act.
> Once the United States was organized
> and the Constitution adopted, these
> tribal rights to Indian lands became
> the exclusive province of the federal
> law.  Indian title, recognized to be
> only a right of occupancy, was ex-
> tinguishable only by the United
> States." Id. at 667.



*Trustee-Proper Duties and Functions*

*Exhibit M*

*Saw Creek and Pine Ria*

*Indian Communities*

**Certificate of Identification**

name: Keith Scott Harris
DOB: November 4, 1976
Address: 4118 Winchester Way
Bushkill, Pennsylvania 18324
issue: Tribal Official
42-4222
to Issued: August 3, 2018
to Expired: November 4, 2020

_____
Signature

_____
Signature of Indian Authority

IN THE COURT OF COMMON PLEAS OF PIKE COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA        :
                                    :
                                    :
                    vs.             :
                                    : No. 690 - 2019
KEEBA HARRIS,                       :
                                    :
                    Defendant       :

## ORDER

AND NOW, this ___30th___ day of November, 2020, upon consideration of the

Defendant's Motion for Amended Court Ordered Competency/Psychiatric Evaluation

and stipulation of counsel for the Commonwealth and counsel for the Defendant, it is

hereby ORDERED as follows:

1. The Pike County Sheriff's Office shall transport the Defendant, Keeba Harris
   to the Norristown State Hospital as soon as practicable for the reasons set
   forth below;

2. The Norristown State Hospital shall conduct an Incompetency Examination of
   the Defendant pursuant to 50 P.S. §7402;

3. The Incompetency Examination shall be conducted in accordance with 50 P.S.
   §7402(e);

# NSH rcv'd 12/2/20

Exhibit O 

4. Upon completion of its Incompetency Examination, the Norristown State Hospital is directed to forward an incompetency examination report to this Court as soon as practicable after completion of said report; and

5. This Court shall thereafter make a determination of competency of the Defendant within the time frames set forth in 50 P.S. §7402(g).

In rendering the above Order, the Court notes that counsel for the Defendant has established a prima facie question of incompetency and that the Defendant, despite notice of the scheduled Hearing on the Motion, failed and/or refused to participate therein.

BY THE COURT:

HON. GREGORY H. CHELAK,
President Judge

c-  Pike County District Attorney
    Oressa P. Campbell, Esquire
    Pike County Jail
    Pike County Probation
    Pike County Sheriff
    Norristown State Hospital
    Court Administrator

NSH rcv'd 12/2/20

NSH ADMINISTRATIVE POLICY DIRECTIVE NO. 1-10- Attachment #1

## NSH INDIVIDUAL GRIEVANCE/APPEAL FORM

**Instructions:**
1. Completed by individual or staff member on the individual's behalf.
2. Employee receiving form must complete *Received By, Date,* and *Time*
3. Nurse in Charge must check appropriate box in *Given to* field and *write the name of the person addressing issue*
4. Enter *Preliminary Actions Taken.* Enter *Grievance Response,* if applicable
5. Immediately fax form to Performance Improvement (PI) at x1254 and CEO's Office at x1013
6. All grievances must have a response within 48 hours (page 1)
7. Fax completed form to Performance Improvement (PI) at x1254 and CEO's Office at x1013
8. Return original completed form to the PI Department before the end of your shift

| Name of individual: Reba S Harris (DC) | Unit: B2 | Date: 01/14/21 |
|---|---|---|

I have made request from Staff members Social worker, Ina Close Dantzler and Psychologist Tiffany Ray on 12/15/20 and 01/13/21 for a copy of my Court Order/Reports that committed me into this facility. My request are denied and I need these documents for my records and legal purposes.

*Signature of Individual:* R Harris

**Received By:** Date: Time:

**Given To:**
- ☑ Nurse In Charge/Name:
- ☐ Attending Psychiatrist/Core Team Name:
- ☐ Doctor on Call (DOC)/Name:
- ☑ CEO / AOC (Patient Abuse or Administrative Issues):

**Preliminary Actions Taken by Staff:** Ms. Harris was informed that a copy of her court order will be mailed, however her competency evaluation report cannot be provided. A verbal explanation of competency areas highlighted in competency report was provided to Ms. Harris.

**Grievance Response:** Ms. Harris was advised to contact her attorney for requests of any legal documents that NSH cannot provide.

*Staff Member Signature/ Date and Time:* Tiffany Ray 1/14/21

| Individual's Signature/Date: | RESOLVED_____ (if resolved, **STOP HERE**) |
|---|---|
| Individual's Signature/Date: | UNRESOLVED _____ (Please explain below and PROCEED TO NEXT SECTION) |

**Explanation, by individual, if unresolved:** Ms. Harris declines to sign. She verbal indicates that when she recieves a copy of her court order this matter will be partially resolved. A copy of the court order was provided 1/19/21

*Client Rights Representative Signature/Date/ Time*

Exhibit O (b)

# MENTAL HEALTH PROCEDURES ACT
## Act of Jul. 9, 1976, P.L. 817, No. 143
### AN ACT
#### Cl. 50

Relating to mental health procedures; providing for the treatment and rights of mentally disabled persons, for voluntary and involuntary examination and treatment and for determinations affecting those charged with crime or under sentence.

## TABLE OF CONTENTS

### Article I.   General Provisions

Section 101.   Short Title.
Section 102.   Statement of Policy.
Section 103.   Scope of Act.
Section 103.1. Definitions.
Section 104.   Provision for Treatment.
Section 105.   Treatment Facilities.
Section 106.   Persons Responsible for Formulation and Review of Treatment Plan.
Section 107.   Individualized Treatment Plan.
Section 108.   Periodic Reexamination, Review and Redisposition.
Section 109.   Mental Health Review Officer.
Section 110.   Written Applications, Petitions, Statements and Certifications.
Section 111.   Confidentiality of Records.
Section 112.   Rules, Regulations and Forms.
Section 113.   Rights and Remedies of Persons in Treatment.
Section 114.   Immunity from Civil and Criminal Liability.
Section 115.   Venue and Location of Legal Proceedings.
Section 116.   Continuity of Care.
Section 117.   Assisted Outpatient Treatment Implementation by Counties.
Section 118.   Assisted Outpatient Treatment Implementation by Department.

### Article II.   Voluntary Examination and Treatment

Section 201.   Persons Who May Authorize Voluntary Treatment.
Section 202.   To Whom Application May be Made.
Section 203.   Explanation and Consent.
Section 204.   Notice to Parents.
Section 205.   Physical Examination and Formulation of Individualized Treatment Plan.
Section 206.   Withdrawal from Voluntary Inpatient Treatment.
Section 207.   Transfer of Person in Voluntary Treatment.

### Article III.   Involuntary Examination and Treatment

Section 301.   Persons Who May be Subject to Involuntary Emergency Examination and Treatment.
Section 302.   Involuntary Emergency Examination and Treatment Authorized by a Physician - Not to Exceed One Hundred Twenty Hours.
Section 303.   Extended Involuntary Emergency Treatment Certified by a Judge or Mental Health Review Officer - Not to Exceed Twenty Days.

*Exhibit O (c)*

(ii)  an opinion as to his capacity to understand the nature and object of the criminal proceedings against him and to assist in his defense;

(iii)  when so requested, an opinion as to his mental condition in relation to the standards for criminal responsibility as then provided by law if it appears that the facts concerning his mental condition may also be relevant to the question of legal responsibility; and

(iv)  when so requested, an opinion as to whether he had the capacity to have a particular state of mind, where such state of mind is a required element of the criminal charge.

((e) amended March 19, 2014, P.L.50, No.21)

(f)  Experts.--The court may allow a psychiatrist or licensed psychologist retained by the defendant and a psychiatrist or licensed psychologist retained by the Commonwealth to witness and participate in the examination. Whenever a defendant who is financially unable to retain such expert has a substantial objection to the conclusions reached by the court-appointed psychiatrist or licensed psychologist, the court shall allow reasonable compensation for the employment of a psychiatrist or licensed psychologist of his selection, which amount shall be chargeable against the mental health and mental retardation program of the locality. ((f) amended March 19, 2014, P.L.50, No.21)

(g)  Time Limit on Determination.--The determination of the competency of a person who is detained under a criminal charge shall be rendered by the court within 20 days after the receipt of the report of examination unless the hearing was continued at the person's request.

(h)  Definition.--As used in this section, the term "licensed psychologist" means an individual licensed under the act of March 23, 1972 (P.L.136, No.52), known as the "Professional Psychologists Practice Act." ((h) added March 19, 2014, P.L.50, No.21)

**Compiler's Note:**  Section 3 of Act 21 of 2014, which amended subsecs. (e) and (f), provided that the amendment shall apply to actions initiated on or after the effective date of section 3.

Section 403.  Hearing and Determination of Incompetency to Proceed; Stay of Proceedings; Dismissal of Charges.--(a)  Competency Determination and Burden of Proof.--Except for an incompetency examination ordered by the court on its own motion as provided for in section 402(d), the individual making an application to the court for an order directing an incompetency examination shall have the burden of establishing incompetency to proceed by a preponderance of the evidence. The determination shall be made by the court. ((a) amended July 2, 1996, P.L.481, No.77)

(b)  Effect as Stay - Exception.--A determination of incompetency to proceed shall effect a stay of the prosecution for so long as such incapacity persists, excepting that any legal objections suitable for determination prior to trial and without the personal participation of the person charged may be raised and decided in the interim.

(c)  Defendant's Right to Counsel; Reexamination.--A person who is determined to be incompetent to proceed shall have a continuing right to counsel so long as the criminal charges are pending. Following such determination, the person charged shall be reexamined not less than every 90 days by a psychiatrist appointed by the court and a report of reexamination shall be

continue to be enforced during any period of involuntary treatment and to whom the person should be released thereafter.

Section 402. Incompetence to Proceed on Criminal Charges and Lack of Criminal Responsibility as Defense.--(a) Definition of Incompetency.--Whenever a person who has been charged with a crime is found to be substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense, he shall be deemed incompetent to be tried, convicted or sentenced so long as such incapacity continues.

(b) Involuntary Treatment of Persons Found Incompetent to Stand Trial Who are Not Mentally Disabled.--Notwithstanding the provisions of Article III of this act, a court may order involuntary treatment of a person found incompetent to stand trial but who is not severely mentally disabled, such involuntary treatment not to exceed a specific period of 60 days. Involuntary treatment pursuant to this subsection may be ordered only if the court is reasonably certain that the involuntary treatment will provide the defendant with the capacity to stand trial. The court may order outpatient treatment, partial hospitalization or inpatient treatment. ((b) amended Nov. 26, 1978, P.L.1362, No.324)

(c) Application for Incompetency Examination.--Application to the court for an order directing an incompetency examination may be presented by an attorney for the Commonwealth, a person charged with a crime, his counsel, or the warden or other official in charge of the institution or place in which he is detained. A person charged with crime shall be represented either by counsel of his selection or by court-appointed counsel.

(d) Hearing; When Required.--The court, either on application or on its own motion, may order an incompetency examination at any stage in the proceedings and may do so without a hearing unless the examination is objected to by the person charged with a crime or by his counsel. In such event, an examination shall be ordered only after determination upon a hearing that there is a prima facie question of incompetency. Upon completion of the examination, a determination of incompetency shall be made by the court where incompetency is established by a preponderance of the evidence. ((d) amended July 2, 1996, P.L.481, No.77)

(e) Conduct of Examination; Report.--When ordered by the court, an incompetency examination shall take place under the following conditions:

(1) It shall be conducted as an outpatient examination unless an inpatient examination is, or has been, authorized under another provision of this act.

(2) It shall be conducted by at least one psychiatrist or licensed psychologist and may relate both to competency to proceed and to criminal responsibility for the crime charged.

(3) The person shall be entitled to have counsel present with him and shall not be required to answer any questions or to perform tests unless he has moved for or agreed to the examination. Nothing said or done by such person during the examination may be used as evidence against him in any criminal proceedings on any issue other than that of his mental condition.

(4) A report shall be submitted to the court and to counsel and shall contain a description of the examination, which shall include:

(i) diagnosis of the person's mental condition;

NORRISTOWN STATE HOSPITAL
1001 STERIGERE STREET
NORRISTOWN, PA. 19401
610-313-5867

# ·Patient Information Leaflet

**KEEBA HARRIS**                         NORRISTOWN STATEHOSP 51-B   ROOM # B2 51

**RX NUMBER** : 06654157                 **RX DATE**   : 00/00/00
**DRUG DISP** : 10MG OLANZAPIN ODT       **DIRECTIONS:** ONE TABLET AT 8AM
**DRUG COLOR:**                                        DX: PSYCHOSIS
**DRUG SHAPE:**
**QTY DISP**  : 8
**PHARMACIST:** FOMALONT, ALEX
**DOCTOR**    : KOZA

---

OLANZAPINE DISINTEGRATING TABLET - ORAL

(oh-LAN-za-peen)

COMMON BRAND NAME(S): Zyprexa

WARNING:  There may be a slightly increased risk of serious, possibly fatal side effects (such as stroke, heart failure, fast/irregular heartbeat, pneumonia) when this medication is used by older adults with dementia. This medication is not approved for the treatment of dementia-related behavior problems. Discuss the risks and benefits of this medication, as well as other effective and possibly safer treatments for dementia-related behavior problems, with the doctor.

If you are using olanzapine in combination with other medication to treat depression, also carefully read the drug information for the other medication.

USES: Olanzapine is used to treat certain mental/mood conditions (such as schizophrenia, bipolar disorder). It may also be used in combination with other medication to treat depression. This medication can help to decrease hallucinations and help you to think more clearly and positively about yourself, feel less agitated, and take a more active part in everyday life.

Olanzapine belongs to a class of drugs called atypical antipsychotics. It works by helping to restore the balance of certain natural substances in the brain.

Talk to the doctor about the risks and benefits of treatment (especially when used in teenagers). See also Precautions section.

HOW TO USE:  Read the Medication Guide provided by your pharmacist before you start taking olanzapine and each time you get a refill. If you have any questions, ask your doctor or pharmacist.

Take this medication by mouth with or without food as directed by your doctor, usually once daily.

This medication comes in a blister or a bottle. Do not remove the tablet from the packaging until you are ready to take it. Make sure your hands are dry before handling the tablet. If your tablet comes in a blister, peel back the foil to carefully remove the tablet. Do not push the tablet through the foil because doing so can damage the tablet. Place the tablet in your mouth right away and allow it to dissolve. After the tablet has melted, it can be swallowed with or without liquid.

The dosage is based on your medical condition and response to treatment. To reduce your risk of side effects, your doctor may direct you to start this medication at a low dose and gradually increase your dose. Follow your doctor's instructions carefully.

Take this medication regularly to get the most benefit from it. To help you remember, take it at the same time each day. It is important to continue taking this medication as prescribed even if you feel well. Do not stop taking this medication without consulting your doctor

Tell your doctor if your condition persists or worsens.

SIDE EFFECTS:  Drowsiness, dizziness, lightheadedness, stomach upset, dry mouth, constipation, increased appetite, or weight gain may occur. If any of these effects persist or worsen, tell your doctor or pharmacist promptly.

Dizziness and lightheadedness can increase the risk of falling. Get up slowly when rising from a sitting or lying position.

Remember that your doctor has prescribed this medication because he or she has judged that the benefit to you is greater than the risk of side effects. Many people using this medication

(CONTINUED)

*exhibit P*

NORRISTOWN STATE HOSPITAL
1001 STERIGERE STREET
NORRISTOWN, PA. 19401
610-313-5867

# Patient Information Leaflet

KEEBA HARRIS                    NORRISTOWN STATEHOSP 51-B   ROOM # B2 51

RX NUMBER : 06654157            RX DATE   : 00/00/00
DRUG DISP : 10MG OLANZAPIN ODT  DIRECTIONS: ONE TABLET AT 8AM
DRUG COLOR:                     PAGE  2    DX: PSYCHOSIS
DRUG SHAPE:
QTY DISP  : 8
PHARMACIST: FOMALONT, ALEX
DOCTOR    : KOZA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

OLANZAPINE DISINTEGRATING TABLET - ORAL

do not have serious side effects.

Tell your doctor right away if you have any serious side effects, including: difficulty swallowing, shaking (tremor), slow heartbeat, fainting, mental/mood changes (such as confusion, restlessness), numbness/tingling of arms/legs, yellowing eyes/skin, severe stomach/abdominal pain, trouble urinating, interrupted breathing during sleep.

This drug may rarely make your blood sugar rise, which can cause or worsen diabetes. Tell your doctor right away if you have symptoms of high blood sugar such as increased thirst/urination. If you already have diabetes, check your blood sugar regularly as directed and share the results with your doctor. Your doctor may need to adjust your diabetes medication, exercise program, or diet.

This drug may also cause significant weight gain and a rise in your blood cholesterol (or triglyceride) levels, especially in teenagers. These effects, along with diabetes, may increase your risk for developing heart disease. Discuss the risks and benefits of treatment with your doctor. (See also Notes section.)

Olanzapine may rarely cause a condition known as tardive dyskinesia. In some cases, this condition may be permanent. Tell your doctor right away if you develop any unusual/uncontrolled movements (especially of the face, lips, mouth, tongue, arms or legs).

This medication may increase a certain natural substance (prolactin) made by your body. For females, this increase in prolactin may result in unwanted breast milk, missed/stopped periods, or difficulty becoming pregnant. For males, it may result in decreased sexual ability, inability to produce sperm, or enlarged breasts. If you develop any of these symptoms, tell your doctor right away.

Get medical help right away if you have any very serious side effects, including: seizures.

This medication may rarely cause a very serious condition called neuroleptic malignant syndrome (NMS). Get medical help right away if you have any of the following symptoms: fever, muscle stiffness/pain/tenderness/weakness, severe tiredness, severe confusion, sweating, fast/irregular heartbeat, dark urine signs of kidney problems (such as change in the amount of urine)

A very serious allergic reaction to this drug is rare. However, get medical help right away if you notice any symptoms of a serious allergic reaction, including: fever, swollen lymph nodes, rash, itching/swelling (especially of the face/tongue/throat), severe dizziness, trouble breathing.

This is not a complete list of possible side effects. If you notice other effects not listed above, contact your doctor or pharmacist.

In the US -

Call your doctor for medical advice about side effects. You may report side effects to FDA at 1-800-FDA-1088 or at www.fda.gov/medwatch.

In Canada - Call your doctor for medical advice about side effects. You may report side effects to Health Canada at 1-866-234-2345.

PRECAUTIONS: Before taking olanzapine, tell your doctor or pharmacist if you are allergic to it; or if you have any other allergies. This product may contain inactive ingredients, which can cause allergic reactions or other problems. Talk to your pharmacist for more details.

Before using this medication, tell your doctor or pharmacist your medical history, especially of: liver problems, seizures, difficulty swallowing, low white blood cell count, dementia, difficulty urinating (for example, due to enlarged prostate),

(CONTINUED)

NORRISTOWN STATE HOSPITAL
1001 STERIGERE STREET
NORRISTOWN, PA. 19401
610-313-5867

# Patient Information Leaflet

KEEBA HARRIS                    NORRISTOWN STATEHOSP 51-B   ROOM # B2 51

RX NUMBER : 06654157                    RX DATE    : 00/00/00
DRUG DISP : 10MG OLANZAPIN ODT          DIRECTIONS: ONE TABLET AT 8AM
DRUG COLOR:                             PAGE  3    DX: PSYCHOSIS
DRUG SHAPE:
QTY DISP  : 8
PHARMACIST: FOMALONT, ALEX
DOCTOR    : KOZA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### OLANZAPINE DISINTEGRATING TABLET - ORAL

glaucoma (narrow angle), stomach/intestinal disease (such as blockage, paralytic ileus), smoking, personal or family history of diabetes, heart disease, high cholesterol/triglyceride levels, breathing trouble during sleep (sleep apnea).

This drug may make you dizzy or drowsy. Alcohol or marijuana (cannabis) can make you more dizzy or drowsy. Do not drive, use machinery, or do anything that needs alertness until you can do it safely. Avoid alcoholic beverages. Talk to your doctor if you are using marijuana (cannabis).

Before having surgery, tell your doctor or dentist about all the products you use (including prescription drugs, nonprescription drugs, and herbal products).

This medication may contain aspartame. If you have phenylketonuria (PKU) or any other condition that requires you to limit/avoid aspartame (or phenylalanine) in your diet, ask your doctor or pharmacist about using this medication safely.

This medication may make you sweat less, making you more likely to get heat stroke. Avoid doing things that may cause you to overheat, such as hard work or exercise in hot weather, or using hot tubs. When the weather is hot, drink a lot of fluids and dress lightly. If you overheat, quickly look for a place to cool down and rest. Get medical help right away if you have a fever that does not go away, mental/mood changes, headache, or dizziness.

Teenagers may be more sensitive to the side effects of this drug, especially weight gain, and also increased amounts of cholesterol, triglycerides, and prolactin. See also Side Effects section for more details.

Older adults may be more sensitive to the side effects of this drug, especially drowsiness, constipation, trouble urinating, confusion, dizziness, and lightheadedness. Drowsiness, confusion,

dizziness, and lightheadedness can increase the risk of falling

During pregnancy, this medication should be used only when clearly needed. Babies born to mothers who have used this drug during the last 3 months of pregnancy may rarely develop symptoms including muscle stiffness or shakiness, drowsiness, feeding/breathing difficulties, or constant crying. If you notice any of these symptoms in your newborn especially during their first month, tell the doctor right away.

Since untreated mental/mood problems (such as schizophrenia, bipolar disorder, depression) can be a serious condition, do not stop taking this medication unless directed by your doctor. If you are planning pregnancy, become pregnant, or think you may be pregnant, immediately discuss with your doctor the benefits and risks of using this medication during pregnancy.

This drug passes into breast milk and may have undesirable effects on a nursing infant. Tell the doctor right away if your baby develops symptoms such as muscle stiffness or shakiness, unusual sleepiness, or difficulty feeding. Consult your doctor before breast-feeding.

DRUG INTERACTIONS:  Drug interactions may change how your medications work or increase your risk for serious side effects. This document does not contain all possible drug interactions. Keep a list of all the products you use (including prescription/nonprescription drugs and herbal products) and share it with your doctor and pharmacist. Do not start, stop, or change the dosage of any medicines without your doctor's approval.

A product that may interact with this drug is: metoclopramide.

Tell your doctor or pharmacist if you are taking other products that cause drowsiness such as opioid pain or cough relievers (such as codeine, hydrocodone), alcohol, marijuana (cannabis), drugs for sleep or anxiety (such as alprazolam, lorazepam, zolpidem), muscle relaxants (such as carisoprodol,

(CONTINUED)

NORRISTOWN STATE HOSPITAL
1001 STERIGERE STREET
NORRISTOWN, PA. 19401
610-313-5867

# Patient Information Leaflet

**KEEBA HARRIS**     NORRISTOWN STATEHOSP 51-B   ROOM # B2 51

**RX NUMBER** : 06654157
**DRUG DISP** : 10MG OLANZAPIN ODT
**DRUG COLOR:**
**DRUG SHAPE:**
**QTY DISP** : 8
**PHARMACIST**: FOMALONT, ALEX
**DOCTOR** : KOZA

**RX DATE** : 00/00/00
**DIRECTIONS:** ONE TABLET AT 8AM
**PAGE  4**   **DX**: PSYCHOSIS

---

**OLANZAPINE DISINTEGRATING TABLET - ORAL**

cyclobenzaprine), or antihistamines (such as cetirizine, diphenhydramine).

Check the labels on all your medicines (such as allergy or cough-and-cold products) because they may contain ingredients that cause drowsiness. Ask your pharmacist about using those products safely.

**OVERDOSE:** If someone has overdosed and has serious symptoms such as passing out or trouble breathing, call 911. Otherwise, call a poison control center right away. US residents can call their local poison control center at 1-800-222-1222. Canada residents can call a provincial poison control center. Symptoms of overdose may include: severe drowsiness/dizziness, fast/irregular heartbeat, unusual/uncontrolled movements, seizures.

**NOTES:** Do not share this medication with others.

Laboratory and/or medical tests (such as blood sugar, weight, blood pressure, blood cholesterol/triglyceride levels, liver function tests) should be performed periodically to monitor your progress or check for side effects. Consult your doctor for more details.

**MISSED DOSE:** If you miss a dose, take it as soon as you remember. If it is near the time of the next dose, skip the missed dose. Take your next dose at the regular time. Do not double the dose to catch up.

**STORAGE:** Store at room temperature away from light and moisture. Do not store in the bathroom. Keep all medications away from children and pets.

Do not flush medications down the toilet or pour them into a

drain unless instructed to do so. Properly discard this product when it is expired or no longer needed. Consult your pharmacist or local waste disposal company.

Information last revised October 2018.
Copyright(c) 2018 First Databank, Inc.

Important: How to Use This Information

This is a summary and does NOT have all possible information about this product. This information does not assure that this product is safe, effective, or appropriate for you. This information is not individual medical advice and does not substitute for the advice of your health care professional. Always ask your health care professional for complete information about this product and your specific health needs.

Copyright by First Data Bank - The Hearst Corporation

☑ Admission   ☐ Transfer   ☐ Discharge

NAME:

SOURCE: ☐ Patient Interview
         ☐ Family Contact
         ☐ Referring Facility
         ☑ Other _____ prior month

ROOM NO.: (Address)

HOSP. NO.:

PHYSICIAN:

HISTORY:

## MEDICATION RECONCILIATION LIST
## PHYSICIAN'S ORDERS
✳ ✳ ✳   NORRISTOWN STATE HOSPITAL   ✳✳✳
Norristown , Pennsylvania  19401-5399

☐ Assaultive Behavior      ☐ Fire Setting
☐ Elopement   ☐ Seizure    ☐ Careless Smoking
☐ Suicide Attempt           ☐ Self Mutilative

Allergies:        NKDA

DO NOT WRITE AN ORDER ON THIS SHEET
UNLESS A YELLOW COPY IS ATTACHED

Medication History Recorded/Verified by:

M = MEDICAL MEDICATIONS
P = PSYCHIATRIC MEDICATIONS

C = CONTINUE
D = DISCONTINUE

| M | P | MEDICATION | ROUTE | DOSAGE | FREQUENCY | INDICATION | C | D |
|---|---|------------|-------|--------|-----------|------------|---|---|
| M | P | None |  |  |  |  | C | D |
| M | P |  |  |  |  |  | C | D |
| M | P |  |  |  |  |  | C | D |
|   | P |  |  |  |  |  | C | D |
| M | P |  |  |  |  |  | C | D |
| M | P |  |  |  |  |  | C | D |
| M | P |  |  |  |  |  | C | D |
| M | P |  |  |  |  |  | C | D |
| M | P |  |  |  |  |  | C | D |
| M | P |  |  |  |  |  | C | D |
| M | P |  |  |  |  |  | C | D |
| M | P |  |  |  |  |  | C | D |
| M | P |  |  |  |  |  | C | D |

NEW MEDICATION ADDED TODAY:

| M |  | Zyprexa | PO | 5mg | daily | psychosis | Ⓒ |
|---|---|---------|-----|------|-------|-----------|---|
| M |  |  |  |  |  |  |  |
| M | P | albuterol | In | 2puf | QID | PRN |  |

**Dutchess County Clerk**                                    **Miscellaneous - 18-2017-29**

| Filed | Liber | Page |
|-------|-------|------|
| 8/10/2017 | 19 | 2455 |

**Document Title**

DECLARATION OF OWNERSHIP AFFIDAVIT

| Error / Correction | Name | Date Filed |
|-------|------|------------|
| | SCOTT TONIA | 8/10/2017 |
| | 22 KINSALE COURT WAPPINGERS FALLS | 8/10/2017 |
| | 3 HOOSE BLVD FISHKILL | 8/10/2017 |
| | 20 OLD FIELD ROAD POUGHKEEPSIE | 8/10/2017 |
| | 204 HOBBS LANE CLINTON CORNERS | 8/10/2017 |
| | 86 RED FOX LANE SALT POINT | 8/10/2017 |

*Exhibit Q*

R+R Tonia Scott
1735 madison Ave. #13E~
New York, New York 10029

BOOK *19* PG *2455*

## DECLARATION OF OWNERSHIP AFFIDAVIT

I, Tonia' Scott, being first duly subscribed and sworn under oath, state that I am the owner of real properties commonly known as stated below which said properties, are located in **Dutchess County, New York**, more particularly described as of land and natural resources.

| Address: | Block and Lot: |
|---|---|
| 22 Kinsale Court, Wappingers Falls | Parcel ID  6.257-4-511.464 |
| 3 Hoose Boulevard, Fishkill | Parcel ID  6.256-1-307.549 |
| 20 Old Field Road, Poughkeepsie | Parcel ID  6.262-4-533.244 |
| 204 Hobbs Lane, Clinton Corners | Parcel ID  6.567-0-704.875 |
| 86 Red Fox Lane, Salt Point | Parcel ID  6.465-3-460.18 |

My ownership of this property is evidenced from inheritance and in accordance to **Aboriginal title** and **Original Indian title.**   Legal precedence illustrates the following:

2017 AUG 10 PM 3:31 — DUTCHESS COUNTY CLERK'S OFFICE RECEIVED

1. As an Indigenous American Indian woman, I, Tonia' Scott have Aboriginal title to my ancestral land of North America/ Turtle Island.

2. **Aboriginal title** is a common law doctrine that the land rights of indigenous peoples to customary tenure persist after the assumption of sovereignty under settler colonialism. All jurisdictions are in agreement that aboriginal title is inalienable, except to the national government, and that it may be held either individually or collectively. Aboriginal title is also referred to as **indigenous title, native title and original Indian title**

   a. "Non- Indian bodies have no authority to title land, only to pay Compensation". **_United States v. Alcea Band of Tillamooks_**



BOOK *19* PG *2456*

b. Consider, also, these words of Justice Mansfield in *Oneida*:
"This right of occupancy which the Indians retain until validly
extinguished has been variously termed aboriginal title, unrecognized
title, original Indian title, or simply *Indian title*."

c. <u>Worcester v. Georgia</u>, 31 U.S. 515 (1832), the Supreme Court
called Indian nations "the undisputed possessors of the soil, from time
immemorial". It also held that the Indians "were admitted to be the
rightful occupants of the soil, with a legal as well as just claim to
retain possession of it, and to use it according to their own- discretion"

d. <u>United States v. Cook</u>, 86 U.S. 591 (1874), the court held: "This
right of use' and occupancy by the Indians is unlimited. They may
exercise it at their discretion". Id. at 593. .

e. <u>United States v. Cook</u>, supra, (2) "Indians are the equivalent of life
tenants on their lands"

f. In <u>Johnson v. McIntosh</u>, "The Court guarantee the. occupants
protection from intrusion." Id. at 1371-72

g. <u>Edwardsen v. Morton, 369 F. Supp. 1359 CD. D.C. (1973).</u>
<u>United States v. Klamath and Moadoc Tribes</u>, supra, which took a
similarly expansive view of Indian title right of occupancy as it existed
prior to any treaty.

h. In <u>Minnesota v Hitchcock.</u> 185 U.S. 373 (1902)," the court
acknowledged that confessedly the fee of the land was in the United
States (North America), subject to a right of occupancy by the

Page 2 of 4

BOOK *19* PG *2457*

Indians". Id. at 388-89.

i. **Cramer v. United States** (1923) was the first Supreme Court decision to acknowledge the doctrine of individual aboriginal title, not held in common by tribes.

3. The United States of America is a charter member of the United Nations. A United Nations resolution (UN resolution) is a formal text adopted by a United Nations (UN) body. The **United Nations Declaration on the Rights of Indigenous People,** signed by United States President Barak Obama is a legally binding United Nations General Assembly Resolution, General Assembly Resolutions have the same weight as full-fledged sources of international law:

    a. *"In this Declaration Indigenous Peoples are those who Embody historical continuity with societies which existed prior to the conquest  and settlement of their territories by Europeans..."*

    b. *Indigenous peoples **HAVE THE RIGHT TO THE LANDS,** territories and RESOURCES which they have traditionally owned, occupied or otherwise USED OR ACQUIRED- Article 26 (1)*

    c. *Indigenous peoples **HAVE THE RIGHT TO OWN,** USE, develop and control the LANDS, territories and RESOURCES that they possess by reason of traditional ownership or other traditional occupation or use. AS WELL AS THOSE WHICH THEY HAVE OTHERWISE ACQUIRED. –Article 26 (2)*

BOOK _19_ PG _2458_

Dated this __25__ day of __APRIL__, 20_17_.

_____
Owner's Signature

## NOTARY ACKNOWLEGEMENT

EXECUTED this day __25__ of __APRIL__, 2017.

STATE OF __New York__

COUNTY OF __New York__

On this day, personally appeared before me, __TONIA SCOTT__, to me known to be the person(s) described in and who executed the within instrument, and acknowledged that he/she signed the same as his/her voluntary act and deed, for the uses and purposes therein mentioned.

Witness my hand and official seal hereto affixed on this day of __25 APRIL__, 20_17_

Notary's Public Signature: _____

My commission expires __09-10-2018__

DUTCHESS COUNTY CLERK'S OFFICE
RECEIVED _August 10_, 20_17_
IN BOOK _19_ AT PAGE _2455_
OF _Miscellaneous Records_ & EXAMINED.
                                    CLERK _JP_

**HENRY CALDERON**
**Notary Public, State of New York**
**No. 01CA6043709**
**Qualified in New York County**
**Commission Expires _09-10-2018_**

Page 4 of 4        **END OF DOCUMENT**

IN THE COURT OF COMMON PLEAS OF PIKE COUNTY, PENNSYLVANIA

CRIMINAL

COMMONWEALTH OF PENNSYLVANIA          :

        v.          :

                  :

TONIA SCOTT          : NO: MD- 147-2019

        Defendant          MJ-60304-CR-201-2019

                  OTN #X 301235-4

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

COMMONWEALTH OF PENNSYLVANIA          : NO. MD- 145-2019

        v.          : MJ-60304-CR-205-2019

SEKOU RASHID-ABDULLAH          : OTN #X 301199-3

        Defendant

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

COMMONWEALTH OF PENNSYLVANIA          : NO. MD- 146-2019

        v.          : MJ-60304-CR-204-2019

KEEBA HARRIS          : OTN #X 301237-6

        Defendant

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

COMMONWEALTH OF PENNSYLVANIA          : NO. MD- 141-2019

        v.          : MJ-60304-CR-207-2019

TROY ANTHONY SUTTON          : OTN #X 301207-4

        Defendant

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

*Exhibit R.*

COMMONWEALTH OF PENNSYLVANIA        : NO. MD- 142-2019

    v.        : MJ-60304-CR-206-2019

ADAM ABDUR RAHIM        : OTN #X 301241-3

    Defendant

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

COMMONWEALTH OF PENNSYLVANIA        : NO. MD- 144-2019

    v.        : MJ-60304-CR-202-2019

MUSA ABDUR-RAHIM        : OTN #X 301216-6

    Defendant

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

COMMONWEALTH OF PENNSYLVANIA        : NO. MD- 143-2019

    v.        : MJ-60304-CR-203-2019

SUSHANE STERON ADAMS-HEYLINGER        : OTN #X 30122804

    Defendant

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MOTION TO CHANGE LOCATION OF PROCEEDINGS BEFORE AN ISSUING AUTHORITY

AND NOW, comes the Commonwealth of Pennsylvania, by and through, Pike County District Attorney, Raymond J. Tonkin, pursuant to Pa. R. Crim. P. 131 and moves this Court as follows:

    1.    The Commonwealth, by way of criminal complaint, has charged each of the above captioned Defendants with the following offenses:

    (a) Aggravated Assault, 18 Pa. C.S. Section 2702(a)(1) two counts;

    (b) Terrorism, 18 Pa. C.S. Section 2717(a)(1);

    (c) Kidnapping, 18 Pa. C.S. Section 2901(a)(1);

    (d) Burglary, 18 Pa. C.S. Section 3502(a)(3); and

    (e) Conspiracy to commit related offenses.

2.  A preliminary hearing for each of the above matters has been scheduled before the Honorable Paul D. Menditto, Sr. on November 26, 2019 at 11:00 a.m.

3.  The Commonwealth believes, and therefore avers, that numerous witnesses will be needed to testify at each preliminary hearing.

4.  That each of the above captioned cases are related and the Commonwealth has charged that each defendant acted in concert in parts of each case.

5.  The cases are best scheduled for a similar date and time.

6.  The court facilities for District Court 60-3-04 are very limited in size.

7.  The Commonwealth believes, and therefore avers, that another facility is needed for the comfort of the witnesses.

8.  The facilities at District Court 60-3-04 are insufficient to provide for the necessary security of the witnesses and the detention of each Defendant.

9.  I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Wherefore, the Commonwealth respectfully requests this Honorable Court to Order that the preliminary hearing in each matter be held at the Pike County Courthouse in Milford, Pennsylvania at a time to be scheduled by the Pike County Court Administrator and the Honorable Paul D. Menditto, Sr., Magisterial District Judge.

Respectfully submitted,

Raymond J. Tonkin
District Attorney

IN THE COURT OF COMMON PLEAS OF PIKE COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA          :
             v.          :
                       :

TONIA SCOTT          : NO: MD- 147-2019
        Defendant          MJ-60304-CR-201-2019
                  OTN #X 301235-4

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

COMMONWEALTH OF PENNSYLVANIA          : NO. MD- 145-2019
             v.          : MJ-60304-CR-205-2019

SEKOU RASHID-ABDULLAH          : OTN #X 301199-3

        Defendant

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

COMMONWEALTH OF PENNSYLVANIA          : NO. MD- 146-2019
             v.          : MJ-60304-CR-204-2019

KEEBA HARRIS          : OTN #X 301237-6

        Defendant

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

COMMONWEALTH OF PENNSYLVANIA          : NO. MD- 141-2019
             v.          : MJ-60304-CR-207-2019

TROY ANTHONY SUTTON          : OTN #X 301207-4

        Defendant

COMMONWEALTH OF PENNSYLVANIA        : NO. MD- 142-2019

        v.                                 : MJ-60304-CR-206-2019

ADAM ABDUR RAHIM                      : OTN #X 301241-3

        Defendant

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :


COMMONWEALTH OF PENNSYLVANIA        : NO. MD- 144-2019

        v.                                 : MJ-60304-CR-202-2019

MUSA ABDUR-RAHIM                      : OTN #X 301216-6

        Defendant

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :


COMMONWEALTH OF PENNSYLVANIA        : NO. MD- 143-2019

        v.                                 : MJ-60304-CR-203-2019

SUSHANE STERON ADAMS-HEYLINGER      : OTN #X 30122804

        Defendant

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :


## ORDER

    AND NOW, this _____ day of November, 2019, upon consideration of the within Motion to Change Location of Proceedings before an Issuing Authority it is hereby ORDERED the preliminary hearing in each of the above captioned matters shall be held before Magisterial District Judge Paul D. Menditto, Sr. at the Pike County Courthouse in Milford, Pennsylvania in _____ room on

the _____ day of _____, 2019, at _____ a.m./p.m.

By The Court:

_____
Gregory H. Chelak, P.J.

C: District Attorney
   Honorable Paul D. Menditto, Sr.
   Thomas E. Mincer, Esq., Conflict Counsel for Sekou Rashid-Abdullah
   Defendant Tonia Scott
   Defendant Keeba Harris
   Defendant Troy Sutton
   Defendant Adam Rahim
   Defendant Musa Abdur-Rahim
   Defendant Sushane Adams-Heylinger
   Court Administrator

CERTIFICATE OF SERVICE

I, Mary C. Swartwood hereby certify that I am this day serving the foregoing motion upon the persons and in the manner indicated below which satisfies the requirements of Pa. R. Crim. P. 577:

Service by ordinary U.S. First Class Mail addressed as follows:

HONORABLE PAUL D. MENDITTO, SR. – *VIA* EMAIL AND U.S. FIRST CLASS MAIL
DISTRICT COURT 60-3-04
213 SILVER LAKE ROAD
DINGMANS FERRY, PA  18328

CONFLICT COUNSEL FOR SEKOU RASHID-ABDULLAH - *VIA* EMAIL AND U.S. FIRST CLASS MAIL
THOMAS E. MINCER, ESQ.
106 WEST HIGH STREET
MILFORD, PA  18337

TONIA SCOTT – PIKE COUNTY CORRECTIONAL FACILITY, LORDS VALLEY, PA
KEEBA HARRIS – PIKE COUNTY CORRECTIONAL FACILITY – LORDS VALLEY, PA
TROY SUTTON – PIKE COUNTY CORRECTIONAL FACILITY – LORDS VALLEY, PA
ADAM ABDUR RAHIM – PIKE COUNTY CORRECTIONAL FACILITY – LORDS VALLEY, PA
MUSA ABDUR-RAHIM – PIKE COUNTY CORRECTIONAL FACILITY – LORDS VALLEY, PA
SUSHANE STERON ADAMS-HEYLINGER – PIKE COUNTY CORRECTIONAL FACILITY – LORDS VALLEY, PA

DATE: 11/21/19

Mary C. Swartwood
Deputy Administrative Clerk

SEE, Pa .R. Crim. P. 1100   (600)

Rule 1100 is the prompt trial rule, which was adapted by our Supreme Court, Pursuant to its rule-making powers under Article 5, Section 10 (c) of the Pennsylvania Constitution. A key provision is that a criminal defendant must be tried within 180 days of the date of filing the criminal complaint. If he is not, then the charges must be dismissed with prejudices.

See  Lewis v.  City of Harrisburg, 158 Pa. Commonwealth Ct. . 318 (1993) 613 A.2d 807 (tell tonia to correct) this statement  ASAP

Pa. R. CRIM P. 324 (a)

" A person of agreed by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that she is entitle to lawful possession , thereof.

Exhibit S

*Exhibit 7*

## § 1154. Law enforcement use of county correctional institutions.

(a) *General rule.* — Sheriffs, constables, members of the Pennsylvania State Police and other persons authorized by the laws of this Commonwealth to make arrests shall have the use, for a period not to exceed 48 hours, of borough and township lockups and county correctional institutions for the detention of persons arrested until they can be disposed of according to law, if found necessary by the officer in charge.

(b) *Reimbursement.*

(1) Boroughs, cities and townships are entitled to receive compensation of not more than $ 2 per day of 24 hours, for each prisoner detained under subsection (a), from the treasury of the county having jurisdiction over the person detained.

(2) This subsection does not apply to counties of the second class.

**HISTORY:**

Act 2009-33 (S.B. 112), P.L. 147, § 7, approved Aug. 11, 2009, eff. in 60 days.

Exhibit U 162



## Natural Sapphire

**Valuation date:** 23 Feb 2014

*Premium Appraisal for:*

Kemuel Scott
1735 Madison Avenue
New York, New York 10029

Weight of NATURAL SAPPHIRE: 2280 CARAT
Measurement: 133.10 X 79.09 X 33.34 MM
Color: Medium dark Blue; very slightly greyish
(heated) (as shown in picture)
Clarity: I3, Included 3
Shape and Cut: Pear Shaped
Number of Gemstone: (01) ONE
Origin of Stone: Africa

Clarity of Gemstone: Translucent
Optic Character: DR
Refractive Index: 1.76-1.77
Microscopic OBS.: FTR & XTL
Specific Gravity: 3.99
Species: Corundum
Comments: Hue Enhanced

**Estimated Retail Replacement Value: $528,212.16 (USD)**

Appraisal is based upon Gemval statistical analysis. Gemval consist of a leading group of professional gemologists and mathematicians. Gemval online gemstone valuation is based upon statistical data updated every month and contains more than 70000 records from over 140 traders. To ensure unbiased valuations, Gemval does not buy or sell gems, nor are affiliated with any jewelry merchants. Gemval has been used as an online pricing reference by professional web traders, jewelers and collectors since 2004.



MGL
Matrix Gemological Lab

Certificate Number:   58440
Weight:               2200.00  Cts
Shape and Cut:        Pear Shaped
Measurement:          133.10 x 79.09 x 33.34 m
Colour:               Blue
Optic Character:      DR
Refractive Index      1.76-1.77
Specific Gravity      3.99
Microscopic Obr.      FTR & XTL
Species:              Corundum
Comments              Hea Enhanced

**Natural Blue Sapphire**

United States District Court for the
Southern District of New York.

Certificate of
Service
Docket Number:

I, Rosemary Scott Sumter, hereby certify under
Penalty of perjury that on April __, 2021, I served
a copy of the 42 USC Complaint, Summons and the list
of documents from the Exhibit List to the below
parties by Priorty mail (U.S. mail):

1. Raymond Tonkin
   Pike County District Attorney
   506 Broad Street
   Milford, PA 18337-1522

2. Jessica Keith
   Norristown State Hospital
   1001 Sterigere Street
   Norristown PA 19401

3. Craig Lowe
   Pike County Correctional Facility
   175 Pike County Blvd
   Lords Valley, PA 18428

_____               _____
Today's Date                        Signature